Commonwealth, Appellant, *v.* Blythe.

576

Argued April 12, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Frank A. Orban, Jr.,* District Attorney, for appellant.

*Wilbert H. Beachy, Jr.,* for appellees.

OPINION BY HIRT, J., July 21, 1955:

Frederick H. Blythe was the owner and Joseph Runo was the operator of a public Bingo game conducted on a large scale in an amusement park in Somerset County, known as Ideal Park. In the operation of the game patrons purchased Bingo cards from any one of five attendants and the stakes played for were "prizes" of various types of merchandise. It is conceded as it must be that the Bingo game as conducted was an unlawful gambling operation. The essential elements were present: a prize was to be won; the winner was determined by chance, and a consideration was paid by the player. Cf. *Commonwealth v. Lund,* 142 Pa. Superior Ct. 208, 15 A. 2d 839. On Sunday, August 30, 1953, the building in which the game was in operation was raided at the direction of the district attorney. Articles to be won as prizes were on display on or under tables, on stands, on shelves or attached to the wall of a large room where the game was played. In a readily accessible adjoining storeroom there was a large stock of additional merchandise of the same general class. Some of the articles in the storeroom had recently been shipped to Ideal Park by Blythe from other places where he had operated Bingo games. The goods and merchandise seized by the officers in the raid have a total value of upwards of $7,000. Cash in the sum of $312.20 was also taken as well as all of the equipment and devices used in the conduct of the game.

Although under §60 of the Act of March 31, 1860, P. L. 382, 18 PS §1445, it was the duty of the county detective to make a return of the property which he had seized, to the next term of the quarter sessions of Somerset County (which began on September 14, 1953), this provision of the law was not strictly complied with. A return was made to the court, but not until December 11, 1953, setting forth in detail a list

of all of the articles seized in the raid and praying for an order forfeiture. The lower court, after hearing, concluded that "all of the merchandise, money and equipment here seized is capable of lawful use" and for that reason was not subject to forfeiture as part of the gambling operation. The propriety of the order in this case raises pure questions of law from which the Commonwealth clearly had the right of appeal. Cf. *Commonwealth v. Bruno,* 176 Pa. Superior Ct. 115, 106 A. 2d 905. The order will be reversed.

Regardless of the manner in which the issue under §60 of the Act of 1860 is raised, the proceeding for forfeiture of property "used for the purpose of unlawful gaming" is in *rem. Com. v. Heiland,* 113 Pa. Superior Ct. 534, 173 A. 759. And the delay of three months in making the return in this case does not raise a jurisdictional question. Gambling devices and money or merchandise identified as parts of the gambling operation are outlaw property and the jurisdiction of the quarter sessions to proceed in *rem* for an order of forfeiture cannot be ousted by the mere failure of an officer to perform an administrative duty. A return by the officer who made the seizure is a statutory method of initiating a forfeiture proceeding. But such action may originate in a petition for forfeiture by the district attorney or by the officer who seized the property regardless of whether any return was ever made, or by petition of the owner of the property seeking its return. *Schuettler v. Maurer et al.,* 159 Pa. Superior Ct. 110, 46 A. 2d 586; *Mills Novelty Company's Appeal,* 316 Pa. 449, 175 A. 548. What is essential in such proceeding, however initiated, is that the owner or possessor of the property be afforded the opportunity of a full hearing on the question whether the device together with the property seized, was used for the purpose of unlawful gaming. The return in the present case might have

been authorized by the lower court *nunc pro tunc, Commonwealth v. Heiland,* supra, but such order was not essential to the jurisdiction of the court in this proceeding.

The cash taken from the aprons of Runo and his assistants which they wore while conducting the illegal operation amounted in all to $255.35. This amount represented the proceeds of sales of Bingo cards to patrons. Forty-five dollars in rolls of dimes available for making change, were taken in the raid from a desk in the Bingo room. Money may be subject to seizure, along with contraband devices when the circumstances make it clearly apparent, as here, that the money at the time of seizure formed an integral part of the illegal gambling operation. *Rosen v. Supt. Police LeStrange et al.,* 120 Pa. Superior Ct. 59, 181 A. 797; *Fairmount Eng. Co. v. Montg. Co.,* 135 Pa. Superior Ct. 367, 5 A. 2d 419; *Commonwealth v. Davenport,* 158 Pa. Superior Ct. 359, 45 A. 2d 405; *Pannulla v. Rosenberg,* 171 Pa. Superior Ct. 233, 90 A. 2d 267. A small amount of additional money ($11.85) taken from Runo's brief case was his property and should be returned to him.

Where articles of merchandise are the stakes played for, instead of money, such merchandise is similarly subject to forfeiture when it forms an integral part of the gambling operation. For each "win" on a Bingo card the player received a ticket and in exchange for from 1 to 30 tickets the player was entitled to receive an article of merchandise selected by him. The value of the article to which the player was entitled was related to the number of tickets surrendered in exchange for it. It is clear that all of the articles on display in the large room where the game was played were a part of the illegal operation and as such were contraband.

The fact that some of the merchandise seized in the raid was identified as having been taken from the storeroom does not exempt it from forfeiture. The storeroom was separated from the Bingo room by a partial partition only 8 or 9 feet high, with an open door between the two rooms. Some prizes were delivered to winners directly from the storeroom and the merchandise was used to replace prizes which had been on display in the Bingo room, when delivered to winners. All of the goods and merchandise in the storeroom constituted a backlog of stock to be used when needed in the illegal operation of which it clearly was an integral part.

The Bingo ball machine, complete, including the blower by means of which chance determined the numbers called, was clearly a part of the gaming device subject to forfeiture and destruction as such. On the other hand the public address system, the electric lighting system, and the conventional furniture in the Bingo room, in their primary uses were not gambling devices and they were not subject to forfeiture. *Commonwealth v. DiOrio et al.,* 159 Pa. Superior Ct. 641, 49 A. 2d 866. The application of §60 of the 1860 Act is limited to such devices as are used for gambling, in the sense that money or other property of value is staked, won or lost as a direct result of their operation. The forfeiture provision of the statute must be strictly construed and "its effect cannot be extended beyond its plain, ordinary and usual meaning, applied with common sense": *American T. & T. Company's Appeal,* 126 Pa. Superior Ct. 533, 191 A. 210.

Except as we have indicated, all of the devices, money and merchandise set forth in the exhibit attached to the petition in this case are adjudged forfeited. To this extent the order of the lower court is reversed.