491 A.2d 1381

**Petition of Terry MAGLISCO.**

**Petition of Helen I. MOORE.**

Superior Court of Pennsylvania.

Argued Nov. 20, 1984.

Filed April 19, 1985.

Gary M. Lang, Pittsburgh, for appellants (at 350 and 528).

Before BROSKY, ROWLEY and JOHNSON, JJ.

BROSKY, Judge:

These consolidated appeals are from the forfeiture of a pistol and several rifles. Appellant contends that the forfeiture was improper. As to the rifles, we agree and reverse; as to the pistol, we affirm.

The relevant facts are as follows. Appellant Maglisco shot her husband with a .38 caliber revolver. The pistol was seized by the police when they arrived on the scene to arrest her. A few hours later, the police returned and confiscated several rifles in her possession. Charges were later dropped. At the forfeiture proceeding,[1] it was alleged that the rifles belonged to Maglisco's mother, appellant Moore. Both the pistol and the rifles were forfeited and this appeal followed.

\* \* \* \* \* \*

## Common law forfeiture

There is no specific statutory provision which would support the instant forfeitures. It therefore must be determined whether there is a common law power to effect these forfeitures. In 1961, this court concluded that, while some pornography was forfeitable under the terms of a statute, a camera used in the production of that pornography was not forfeitable. See *Commonwealth v. Schilbe*, 196 Pa.Super. 361, 175 A.2d 539 (1961). "Obviously, in the absence of any statute providing for the forfeiture of a camera and its accessories used for the purpose of taking obscene pictures, there is no authority to do so." *Id.*, 196 Pa.Superior Ct. at

---

1. This was conducted pursuant to Pa.R.Crim.P. 324 which provides the following:

(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

(c) A motion to suppress evidence under Rule 323 may be joined with a motion under this rule.

361, 175 A.2d at 541; see also *Commonwealth v. Spisak,* 69 D & C2d 659 (Somerset 1974); *Commonwealth v. Stimer,* 8 D & C3d 317 (Somerset 1977). Thus, *Schilbe* held that while contraband *per se* is forfeitable, derivative contraband is forfeitable only if there is statutory authority making it so.

■ The difference between these types of contraband was explained in *Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 46, 369 A.2d 800, 802 (1977):

> In this evolution, two distinct classifications of contraband have been developed; contraband *per se* and derivative contraband. Contraband *per se* is property the mere possession of which is unlawful. *One 1958 Plymouth Sedan,* [*v. Commonwealth of Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) ], *supra; United States v. One Lot of Eighteen Firearms,* 325 F.Supp. 1326 (D.N.H.1971). Heroin and "moonshine" whiskey are examples of contraband *per se.* Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act. An example of derivative contraband is a truck used to transport illicit goods.

While reference to a statute is necessary even vis-a-vis derivative contraband, it need not be a reference to the specific item (as it would be in contraband *per se* ) but need only be to the outlawed activity in which the item was used. "In order to determine whether property is contraband, therefore, reference must be made to the statute that outlaws the property *or the particular use of the property.*" *Commonwealth v. Landy,* 240 Pa.Super. 458, 463, 362 A.2d 999, 1001 (1976) (emphasis added). Both *Landy, supra,* and *Commonwealth v. Coghe,* 294 Pa.Super. 207, 209, 439 A.2d 823, 824 (1982) affirmed the forfeiture of items involved in the perpetration of a crime without any statutory authority for that forfeiture, thus implying, contrary to *Schilbe,* that "contraband", whether *per se* or derivative, is forfeitable without statutory authority.[2]

**2.** Both cases involved money: in *Landy* the proceeds of illegal activity and in *Coghe* the "blood money" used to hire a murderer. That this

The Supreme Court of West Virginia wrote at the turn of the century:

> We cannot believe that it was the design of the state Constitution or of the fourteenth amendment to the national Constitution, in declaring that no one shall be deprived of property without due process of law, to enervate and emasculate government of powers so essential and deeply rooted in the social fabric long before the adoption of American Constitutions. They effect no repeal of such inherent common-law powers.

*Woods v. Cottrell,* 55 W.Va. 476, 47 S.E. 275, 277–8 (1904). Similarly, we cannot believe that the passage of statutes providing for specific types of contraband *per se* forfeitures can be assumed to inferentially invalidate the common law forfeiture of derivative contraband.[3]

## Derivative Contraband

The law of derivative contraband is ancient, much criticized and the subject of reform.[4] All three of these charac-

was money and not another type of instrumentality does not bar the latter being similarly forfeited. The principle is the same.

3. Federal forfeiture proceedings cannot be instituted absent an applicable statute. This Commonwealth need not be similarly constrained, as there is no Federal Constitutional basis for this stricture. *United States v. Lane Motor Co.,* 199 F.2d 495 (10th Cir.1952).

4. *See* Maxeiner, Jas.R., Constitutionalizing Forfeiture Law—The German Example, 27 The American Journal of Comparative Law 635 (1979); Maxeiner, Jas.R., Bane of American Forfeiture Law—Banished at Last?, 62 Cornell L.Rev. 768 (1977); Hughes, Wm. J., In Personam (Criminal) Forfeiture and Federal Drug Felonies: An Expansion of a Harsh English Tradition into a Modern Dilemma, 11 Pepperdine L.Rev. 613 (1984); Comment, Forfeiture of Derivative Contraband Under the Contraband Seizure Act and the Comprehensive Drug Abuse and Control Act of 1970: *United States v. One 1975 Mercedes 280 S,* 40 Ohio St.L.J. 007 (1979); Comment, Forfeiture Seizures and the Warrant Requirement, 48 U.Chi.L.Rev. 960 (1981); Comment, Forfeiture of Property Used in Connection with Criminal Acts, 25 Wayne L.Rev. 83 (1978). Comment, Constitutional Law—Fourth Amendment—Illegal Seizure of Derivative Contraband Bars Forfeiture. *United States v. $38,394 U.S. Currency,* 498 F.Supp. 1325 (N.D.Ill.1980), 60 Wash.U.L.Q. 705 (1982); Comment, Due Process Implications of Shifting the Burden of Proof in Forfeiture Proceedings Arising Out of Illegal Drug Transactions, 1984 Duke L.J. 822; Clark, Morris, Civil and Criminal Penalties and Forfeitures: A Frame-

teristics spring from the same definitional quirk: "In a forfeiture proceeding, the object is treated as the wrongdoer...." Wayne L.Rev., *supra*, 83. The Biblical and medieval application of what we might now view as a superstitious attribution of an animus to an inanimate object was transformed into the legal fiction that the action was against the object.

> In the overwhelming number of cases of this category— which revolve upon the question of the interests of innocent third parties who stand to be penalized, in effect, by the impending forfeitures—the federal courts, including the United States Supreme Court, have upheld the government's right to enforce the forfeiture, thereby sacrificing the interests of parties who by no stretch of any definition could be said to have contributed to the offence for which the forfeiture was being exacted. This is candidly acknowledged by the courts who have for this purpose alone resorted to the rationale that in such forfeiture actions, it is the thing itself which is the offender, not its owner. The current interpretation of such an action is that it is a proceeding undertaken by the government in a civil action *in rem*. But this is hardly more than an attempt to put an ostensibly respectable disguise on an action which is at bottom nothing else than the deodand "updated."

The Goring Ox, *supra*, 215.

The very source of its ancient impulse—the attribution of fault to the object—was also the focus of the criticism of this doctrine and of its reform. Although somewhat modified in our application, this source has left some results critical to the resolution of the case before us.

■ Prime among these is that there need not be an underlying conviction of a crime to support the forfeiture.

work for Constitutional Analysis, 60 Minn.L.Rev. 379 (1976); Finkelstein, Jacob J., The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notions of Sovereignty, 46 Temple L.Q. 169 (1973).

Thus, conviction of a crime is not necessary to support forfeiture proceedings; the Commonwealth need simply prove by a preponderance of the evidence that a vehicle was involved in, as here, the sale or transport of a controlled substance.

*Commonwealth v. 1978 Toyota,* 321 Pa.Super. 549, 552, 468 A.2d 1125, 1126 (1983). The initial criminal proceeding can be nol prossed, as in *Toyota, supra,* or can result in an acquittal. *See United States v. One 1976 Lincoln Mark IV,* 462 F.Supp. 1383 (W.D.Pa.1979). Thus, the lack of a conviction here is not fatal to the forfeiture proceeding.

■ Another long-lasting consequence is that the proceeding, initially held to be civil and *in rem* is, even now, considered only quasi-criminal. As a result, the object's connection with the crime need only be proved by a preponderance of the evidence, not beyond a reasonable doubt. See *Landy, Fassnacht* and *1978 Toyota, supra.*

■ In the instant case, the pistol was uncontrovertibly fired by appellant Maglisco with a bullet lodging in the leg of her husband. We do not hesitate to conclude that, by a preponderance of the evidence, a crime was committed with the pistol and it is, therefore, derivative contraband.

■ This conclusion cannot be reached with regard to the rifles. There was no evidence presented at the forfeiture hearing that the rifles had been used in the commission of any crime. Nor has extensive research disclosed a single case where the "guilt" of one object of derivative contraband was held to attach by association to other similar, but non-culpable objects owned by the same person. Such a theory has certain common-sense validity, which is well-illustrated by this very case. The court below was, by its own statements, seeking to avoid the recurrence of another firearm incident through the removal of the rifles from appellant Maglisco's possession. But, if derivative contraband is defined only as those objects used in the commission of a crime, then the rifles cannot be so labelled, and, thus, cannot be forfeited. In an effort to resolve this issue, we

will step back and view the traditional justifications for this doctrine and the modern safeguards which have risen around it.

One of the primary justifications for *in rem* forfeiture is that it imposes a penalty. Notwithstanding the legal fiction which gives rise to actions against automobiles and not their owners, the United States Supreme Court, in according Fifth Amendment protection to forfeiture actions, remarked most sensibly that, "[w]hen the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty...." *United States v. United States Coin and Currency*, 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971).

However, this justification for *in rem* forfeiture has been subject to much criticism. "Civil *in rem* forfeitures ... should not be used as tools for imposing punitive sanctions for criminal violations because they do not utilize sufficiently protective procedures." Duke L.J. *supra*, at 831. See also Cornell L.Rev., *supra*, at 801. Most importantly, double jeopardy is held not to attach to forfeiture proceedings precisely because they are not punitive. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Thus, any extension of the derivative contraband doctrine in order to impose an additional penalty would be a rather dubious proposition.

The other, and more acceptable rationale is simply stated: "to remove the operating tools of crime from criminals." *Lincoln, supra*, at 1391. *See* also *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686, 94 S.Ct. 2080, 2093, 40 L.Ed.2d 452 (1974); Comparative Law, *supra*, at 640; *Duke* L.J., *supra*, at 831. This deterrent function would probably be quite well served here by forfeiture of the rifles.

Two major reforms have ameliorated the harshness of *in rem* forfeiture. The first of these requires at least a minimal showing of blameworthiness—albeit not necessar-

ily criminal culpability—on the part of the object's owner.[5] While we recognize that trend to be a salutary one, incorporated into the common law of this Commonwealth, it would not limit us here. Appellant Maglisco is quite blameworthy and the trial court did not find it credible that appellant Moore really owned the rifles.

The other major reform—which we also endorse—is proportionality. That is, even if the requisite minimum of blameworthiness is present, is the value of the forfeited item in any reasonable way commensurate or proportional to the offense?[6] Again, this requirement would pose no bar to the forfeiture of the rifles; such a forfeiture would be quite reasonable in light of the seriousness of appellant's offense. However, other considerations result in the conclusion that the rifles were improperly forfeited.

The question before us is whether objects can acquire "guilt by association" with other objects which are derivative contraband—simply by virtue of being owned by the same person and being a type of similar object. If the answer to this question is in the affirmative it would appear that we would have taken a giant backward step toward forfeiture of estates.

In medieval law, the entire estate of certain classes of felons were forfeited to the crown. Foremost among these felonies was treason. This was the basis of the forfeiture of the estates of Loyalists during the American Revolutionary War. Notably, that was the last time that this doctrine was used in our country. Admittedly, a "guilt by association" theory would not subject the entire estate to forfeiture—only those objects in the estate which are similar to

**5.** See *Lincoln Mark IV, supra,* at 1391 for an excellent interpretation of this requirement. See also *United States v. One 1974 Mercury Cougar XR–7,* 397 F.Supp. 1325 (C.D.Cal.1975); *United States v. One 1971 Chevrolet Corvette,* 393 F.Supp. 344 (E.D.Pa.1975); *Calero-Toledo, supra,* 416 U.S. at 689, 94 S.Ct. at 2094; Comparative Law, *supra,* at 635–7, 645–6.

**6.** *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 700–01, 85 S.Ct. 1246, 1250–51, 14 L.Ed.2d 170 (1965); *Utah v. One Porsche,* 526 P.2d 917 (Utah 1974); *Commonwealth v. One 1970 Lincoln Auto,* 212 Va. 597, 186 S.E.2d 279 (1972); Comparative Law, *supra,* at 642–4.

the derivative contraband. Nevertheless, permitting objects to be defined as derivative contraband under a "guilt by association" rule would be a distinct move toward the forfeiture of entire estates, and, as such, we reject it.

The practical problems of applying such a standard would also be considerable. To what degree would items have to be similar in order to justify their "guilt by association"? Even identical items could pose problems. If a crime is committed using a vehicle, are the other vehicles owned by the defendant also to be forfeited?

It also weighs heavily in our determination of this issue that extensive research has not disclosed a single application of this "guilt by association" doctrine. Therefore, we conclude that while the pistol was properly forfeited, the rifles were not.

Accordingly, we affirm in part and reverse in part ordering the return of the rifles to appellant Maglisco.