568 A.2d 233

**COMMONWEALTH of Pennsylvania**

v.

**Edwin R. CROSBY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 2, 1988.

Filed Jan. 3, 1990.

142

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before BROSKY, ROWLEY and MONTEMURO, JJ.

ROWLEY, Judge:

This is an appeal from a judgment of sentence, following appellant's guilty plea to two counts of driving under the influence of alcohol, which imposed a period of incarceration to be followed by a period of probation. As a condition of probation, the trial court *sua sponte* ordered that the appellant's truck, which he was driving at the time of the two incidents in issue, be forfeited. Appellant asserts that there is no authority permitting forfeiture of a vehicle involved in the crime of driving under the influence as a condition of probation. Appellant also argues that because the order of forfeiture was *sua sponte*, no procedures were followed to establish that the truck was derivative contraband, as found by the trial court. Finally, appellant argues that there is no statutory authority for the forfeiture in this case, and in the absence of statutory authority, there can be no forfeiture of derivative contraband in Pennsylvania. Upon full consideration of the record, the arguments of the parties, and the trial court's opinion, we affirm the judg-

ment of sentence in part and vacate it in part, and remand for further proceedings.

## I. FORFEITURE AS CONDITION OF PROBATION

■ The trial court asserted, and the Commonwealth argues, that the forfeiture of appellant's truck as a condition of probation is authorized by 42 Pa.C.S. § 9754(c)(7) and (13). With regard to an order of probation, § 9754(b) provides:

(b) **Conditions generally.**—The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.

Section (c) then provides as follows:

(c) **Specific conditions.**—The court may as a condition of its order require the defendant:

(1) To meet his family responsibilities.

(2) To devote himself to a specific occupation or employment.

(2.1) To participate in a public or nonprofit community service program unless the defendant was convicted of murder, rape, aggravated assault, arson, theft by extortion, terroristic threats, robbery or kidnapping.

(3) To undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose.

(4) To pursue a prescribed secular course of study or vocational training.

(5) To attend or reside in a facility established for the instruction, recreation, or residence of persons on probation.

(6) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.

(7) To have in his possession no firearm or other dangerous weapon unless granted written permission.

(8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.

(9) To remain within the jurisdiction of the court and to notify the court or the probation officer of any change in his address or his employment.

(10) To report as directed to the court or the probation officer and to permit the probation officer to visit his home.

(11) To pay such fine as has been imposed.

(12) To participate in drug and alcohol treatment programs.

(13) To satisfy any other condition reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

These enumerated specific conditions of probation authorized by § 9754 can all be classified as behavioral restrictions or conditions. They relate to the manner in which the probationer is either restricted from acting or is directed to act. That the specific conditions of probation authorized in § 9754, including subsection (c)(7), are behavioral conditions, directed at rehabilitation of a defendant, and are not punitive, has been emphasized by the Supreme Court. In *Commonwealth v. Quinlan*, 488 Pa. 255, 412 A.2d 494 (1980), the Court stated:

Parole and probation are established variations on the imprisonment of convicted criminals and are primarily concerned with the rehabilitation and restoration to a useful life of the parolee or probationer.

*Id.*, 488 Pa. at 258, 412 A.2d at 496. Similarly, in *Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179 (1979), the Court stated:

[C]onditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen; courts therefore are traditionally and properly invested with a broader measure of discretion in fash-

ioning conditions of probation appropriate to the circumstances of the individual case.

*Id.,* 483 Pa. at 598, 397 A.2d at 1184 (footnote omitted).

Not only are the conditions of probation authorized by § 9754(c) directed toward the rehabilitation of a defendant's behavior, but other than § 9754(c)(8) permitting an order of restitution as a condition of probation, none of the specific conditions of probation authorized by law relates to pecuniary matters. Although § 9754(c)(11) permits the court to condition probation upon payment of a fine, § 9754(c)(11) does not provide the authority for *imposing* the fine; on the contrary, § 9754(c)(11) only permits the condition of payment of a fine "as *has been* imposed." None of the specific conditions in § 9754(c) explicitly or implicitly authorize the economic deprivation as has been ordered in the present case.

Section 9754(c)(7), specifically relied upon by the Commonwealth, only authorizes the restriction of *possession* of firearms or deadly weapons; it does not permit *forfeiture* to accomplish the restriction on possession of firearms. See *Commonwealth v. Arthur,* 384 Pa.Super. 613, 559 A.2d 936 (1989). Therefore, it too, relates solely to the behavioral conditions imposed on the defendant.

Section 9754(c)(13), also expressly relied upon by the Commonwealth, does not authorize the forfeiture as a condition of probation in this case. Subsection 13 enables a court to impose any condition "reasonably related to the rehabilitation" of a defendant. Although in the present case the trial court stated that the forfeiture was ordered to assist in the rehabilitation of the defendant, the circumstances of the order provide no foundation for such a conclusion. Forfeiture of appellant's truck in no manner limits his ability to purchase another vehicle, or, if he already has access to another vehicle, to drive that one. The only thing accomplished by the forfeiture is the seizure of valuable property, i.e., imposition of a fine "in kind."

The trial court had available to it, under § 9754, the means of *effectively* restricting the behavior of appellant by

precluding him from driving during his probationary period, thereby in a more realistic manner assisting in the rehabilitation of the appellant. The trial court imposed *no* conditions on appellant's consumption of alcohol or driving during the period of probation despite the trial court's directive that appellant undergo alcohol evaluation and attend safe driving school. Thus, under the conditions actually imposed on appellant with regard to his probation, the trial court ordered the forfeiture of the appellant's truck, but took no measure to ensure that even an hour after probation was imposed appellant could not be driving some other vehicle while under the influence of alcohol. In light of these facts, we cannot agree that forfeiture of the truck constitutes rehabilitation, and therefore forfeiture of the truck is not authorized under § 9754(c)(13). Consequently, we must vacate that portion of the judgment of sentence imposing forfeiture as a condition of probation.

## II. COMMON LAW FORFEITURE

Our inquiry does not cease upon the conclusion that the trial court had no authority for ordering the forfeiture of the truck as a condition of probation. In his post-sentence motions filed after appellant was sentenced to have his vehicle forfeited, appellant filed a motion for return of property pursuant to Pa.R.Crim.P. 324. This motion, along with other post-sentencing motions, was denied and the instant appeal followed. Therefore before us for resolution is also the issue of whether it was proper to deny appellant's motion for return of property under the common law of forfeiture of contraband. This issue raises several separate and distinct inquiries. First is the question of whether the truck constitutes contraband.

There are two types of contraband: contraband per se, and derivative contraband. Contraband per se is something which it is illegal to possess, such as heroin. Derivative contraband is defined as property which is not inherently illegal but which is used in the perpetration of an unlawful act. *Commonwealth v. Fassnacht*, 246 Pa.Super.

42, 369 A.2d 800 (1977). Inasmuch as appellant pled guilty to driving under the influence of alcohol, and it is undisputed that the truck in question is the one which he was driving at the time he was arrested on both charges of driving under the influence of alcohol, the truck in this case falls within the technical definition of derivative contraband because it was used in the "perpetration" of the crime. The more significant questions in this appeal, however, are whether there is any authority for forfeiture of the truck, and if so, whether it is mandatory that the truck be forfeited.

In the federal courts, "forfeiture is an in rem proceeding against property that Congress has *statutorily* classified as 'contraband.'" Note, *Constitutional Law—Fourth Amendment—Illegal Seizure of Derivative Contraband Bars Forfeiture*, 60 Wash.U.L.Q. 724, 725 (1982) (emphasis added). It is also the general rule in the United States that "since forfeitures are not favored, ... they will not be given effect to, *except by the express terms of a statute*, and where the facts which purport to require such action come clearly and plainly within the provisions of the law." 37 C.J.S. *Forfeitures*, § 5(a) (emphasis added). Similarly, "the power of the government to deprive the citizen of his property by forfeiture *must rest on statute, and cannot be found in any supposed inherent or common law judicial power:* 94 C.J.S., Weapons, § 25; 56 Am.Jur., Weapons, § 21." *Commonwealth v. Spisak*, 69 D. & C.2d 659, 665–666 (1974) (emphasis added). Forfeiture has been defined as "the divestiture of property without compensation, in consequence of a default of an offense, and is a method deemed necessary *by the legislature* to restrain the commission of the offense and to aid in its prevention." 36 Am.Jur.2d *Forfeitures* § 1 (emphasis added). It has also been said that the "law of forfeitures is basically *statutory* in nature." Annot., 38 A.L.R.4th 497 (emphasis added).

Until the early 1980's, forfeiture cases in Pennsylvania involved *statutes* which authorized the forfeiture. *See Commonwealth v. Blythe*, 178 Pa.Super. 575, 115 A.2d 906

(1955); *Commonwealth v. DiOrio*, 159 Pa.Super. 641, 49 A.2d 866 (1946); *Commonwealth v. American Telephone and Telegraph Co's. Appeal*, 126 Pa.Super. 533, 191 A. 210 (1937). In fact, the Court ordered the return of confiscated, allegedly contraband, photographic equipment on the basis that "in the absence of any statute providing for the forfeiture of a camera and its accessories used for the purpose of taking obscene pictures, there is not authority to do so." *Commonwealth v. Schilbe*, 196 Pa.Super. 361, 175 A.2d 539 (1961) (affirming on trial court opinion, reprinted at 175 A.2d 539–542). Similarly, in *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976), the Court held that the money obtained from the sale of illegal drugs could be forfeited at least in part because the statutory scheme relating to penalties for drug offenses provided for the confiscation of such funds by means of the imposition of a fine, following conviction, in an amount that is "sufficient to exhaust assets utilized in *and the profits obtained from* the illegal activity." *Id.*, 240 Pa.Superior Ct. at 464, 362 A.2d at 1002 (emphasis in the original).

Despite these indicia that the law in Pennsylvania required statutory authority before derivative contraband could be forfeited, since 1982 there has been a series of opinions by the Superior Court which have held that there was common law authority for ordering forfeiture of derivative contraband. Significantly, however, the authorities cited in these opinions to support this proposition were cases in which there had been *statutory* authority for the forfeiture.

For example, in *Commonwealth v. Coghe*, 294 Pa.Super. 207, 439 A.2d 823 (1982), wherein the court upheld an order directing the forfeiture of the defendant's $1,000 down payment on a contract to have his wife killed, the only authority cited by the Court for its proposition that "property which is contraband may be forfeited to the Commonwealth," was the criminal *statute* expressly providing for forfeiture of certain items involved in drug offenses, 35 P.S.

§ 780–128, and *Landy, supra,* in which the court found statutory authorization for the forfeiture.

Thereafter, in two decisions filed the same day, the Superior Court again found that forfeiture was authorized in the absence of any statutory authority. *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Estate of Peetros v. County Detectives,* 341 Pa.Super. 558, 492 A.2d 6 (1985). Yet in *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985), the only Pennsylvania authorities cited to support the finding of common law forfeiture of derivative contraband were *Landy* and *Coghe,* both of which themselves rely on authority requiring *statutory* authorization for derivative contraband to be forfeitable.

In *Estate of Peetros v. County Detectives,* 341 Pa.Super. 558, 492 A.2d 6 (1985), the only authority cited to support the conclusion that derivative contraband is subject to forfeiture is Pa.R.Crim.P. 324 which provides that when considering a petition for the return of seized property, the court *may* order forfeiture if it determines that the property is contraband. However, because the statute authorizing the Supreme Court to promulgate the Rules of Criminal Procedure expressly provides that the Court is *not* empowered to "abridge, enlarge nor modify the substantive rights of any litigant," 42 Pa.C.S. § 1722(a)(1), unless there is some independent authority for a court to order forfeiture, Rule 324 should not be interpreted as authorizing the forfeiture because such a forfeiture would affect the substantive rights of the parties to the property being forfeited.

■ While this brief review of the highlights of the law of forfeiture of derivative contraband suggests that there may be no convincing authority to support the conclusions in *Coghe, Maglisco,* and *Peetros* that there can be "common law" forfeiture of derivative contraband in the absence of express statutory authority, we, as a three-judge panel of this Court, are bound to follow these three precedents regardless of the soundness of their logical underpinnings,

and particularly in the absence of any instruction from the Supreme Court on this issue.[1]

*Coghe, Maglisco,* and *Peetros* are materially indistinguishable from the present case.[2] Just as the items in the

1. Contrary to the Dissent's assertion that we are selectively and expediently applying the concept of *stare decisis* by following *Coghe, Maglisco,* and *Peetros,* rather than *Schilbe,* we recognize the holding in *Schilbe* that there is to be no forfeiture of derivative contraband in the absence of a legislative mandate. However, bearing in mind that the former three cases are as much a part of the developing common law in Pennsylvania as is *Schilbe,* it appears to us that these more recent cases evidence a changing pattern in the law affecting common law forfeiture which must be acknowledged.

2. The bases upon which the Dissent finds *Maglisco* and *Peetros* to be distinguishable from the present case are not supported by the published opinions in those cases. The Dissent asserts that *Maglisco* "can be reasonably cited to allow common law forfeiture of an instrumentality used in the deliberate attempt to injure or kill another individual," (At 245), and because there was no such deliberate attempt in the present case *Maglisco* is distinguishable. However, nowhere in the opinion in *Maglisco* does the court indicate that Mrs. Maglisco had the deliberate intent to kill her husband. On the contrary, the opinion recites that the criminal charges against Mrs. Maglisco were dropped despite the uncontroverted fact that the bullet which lodged in Mr. Maglisco's leg was fired by Mrs. Maglisco. Thus the inference was raised that Mrs. Maglisco did *not* have the intent to shoot her husband. While the language in *Maglisco* supports the conclusion that there was a preponderance of the evidence that the pistol was used in the commission of a crime, there is nothing to indicate that Mrs. Maglisco "deliberately and intentionally" shot her husband.

   We also note that even if we agreed with the Dissent's interpretation of the holding in *Maglisco,* we would find *Maglisco* applicable because there is nothing in the record to suggest that appellant did not deliberately drink the alcohol and did not then deliberately drive his vehicle. The fact that fortuitously no one was seriously injured is irrelevant. The significant fact is that appellant deliberately and intentionally drove while drunk, and the possibility that someone would be seriously injured or killed as a result thereof was the risk undertaken by appellant.

   The Dissent also asserts that *Peetros* is distinguishable from the present case because *Peetros* can be cited "to allow forfeiture of items which essentially are instruments of crime without much prospect of lawful or legitimate use," (At 245) but the vehicle in the instant case has a legitimate use. In *Peetros,* however, the trial court had held that because there was a lawful purpose for the loan-sharking books, they could not be forfeited. In reversing this decision, the Superior Court did not disagree with the trial court's factual conclusion that there was a legitimate purpose to which the loan-sharking books could be put. Rather, the Superior Court only held that to determine whether property is derivative contraband, one must look at the status of the property when it was seized and the uses to which it had been put at

former three cases were used in the crimes committed in those cases, the appellant's truck in the present case was undeniably used in the commission of the two counts of driving under the influence of alcohol. Therefore, as in *Coghe, Maglisco,* and *Peetros,* the derivative contraband truck in the present case is forfeitable.

However, determining that the truck is forfeitable does not end our inquiry. There appears to be some difference of opinion in the Superior Court, as evidenced by the decisions in *Maglisco* and *Peetros,* as to whether derivative contraband *must* be forfeited or whether derivative contraband is only forfeit*able.* In *Maglisco,* the Court discussed whether or not property is *forfeitable.* It noted that under *Schilbe,* "derivative contraband is *forfeitable* only if there is statutory authority," but that *Landy* and *Coghe* suggest that contraband is *forfeitable* regardless of whether it is *per se* or derivative. *Maglisco, supra,* 341 Pa.Superior Ct. at 528, 491 A.2d at 1382–1383. Particularly in light of the Court's discussion in *Maglisco* of the counterbalances to the harshness of forfeiture—a minimal showing of blameworthiness and proportionality between the crime committed and the value of the item to be forfeited—and its conclusion that under these tests, and but for the fact that the rifles which had been seized and which were undeniably not used by the defendant when she shot her husband, the forfeiture of the rifles would have been "quite *reasonable,*" the Opinion suggests that forfeiture is not automatic upon a determination that certain property satisfies the technical definition of "derivative contraband."

On the other hand, in *Peetros,* although the Court repeatedly asserted the issue as being whether loan-sharking record books were derivative contraband and *"subject to* forfeiture," upon determining that the books were derivative contraband, the Court, without discussion of the advisa-

that time. Thus, *Peetros* does not hold that items which have little "prospect of lawful or legitimate" use are forfeitable and other items are not, but instead holds that whether an item is forfeitable depends upon whether at the narrow moment in time when it is forfeited, it is being used for a legitimate or an illegal purpose.

bility of ordering forfeiture, reversed the trial court's order granting the petitioner's motion for return of property and ordered the subject property forfeited. Thus, in *Peetros*, the Court's order could be interpreted as applying the principle that once property is classified as derivative contraband it *must* be forfeited.

We are of the opinion that significant dangers are inherent in a requirement of mandatory forfeiture for all derivative contraband particularly where the forfeiture is one ordered by a court pursuant to the common law and without any statutory authorization. In those instances in which the legislature has specifically authorized forfeiture of derivative contraband, it has also provided for limitations on forfeiture and has resolved numerous potential problems resulting from a blanket or automatic order of forfeiture. For example, 35 P.S. § 780–128 provides that certain property related to the commission of drug offenses shall be subject to forfeiture. However, while the statute specifically provides that all conveyances used to facilitate drug offenses are subject to forfeiture, the legislature has included in the statute a provision to protect innocent third parties from the harshness of forfeiture. Thus, the statute provides that when a common carrier is used for transportation under this statute, there shall not be a forfeiture unless the common carrier consented to or was privy to the drug violation. Similarly, if the owner of the property to be forfeited did not know of, or give consent to, the use of his or her property to facilitate the drug offense, the property cannot be forfeited. The statute also prohibits forfeiture to the extent of bona fide security interests in the property. In addition, the statute establishes who is to have custody of forfeited property, prior to a final order of forfeiture, and what is to be done with the property or proceeds thereof upon a final order of forfeiture. Moreover, the statute renders the Attorney General answerable annually to the legislature for a report of all property forfeited under the statute and accounting of proceeds derived from the sale of forfeited property.

In addition to establishing exceptions to the forfeiture provisions where the rights of innocent third parties are involved, and in addition to setting forth requirements for disposition of forfeited property and an accounting for such forfeited property or proceeds, the drug statute also explicitly sets forth the procedures to be followed to effectuate a forfeiture under the statute. 35 P.S. § 780-129. These provisions ensure notice to all owners and possessors of the property, provide for an opportunity to respond, both in writing and at a hearing, to the Commonwealth's petition for forfeiture, and set forth the respective burdens of proof of each party at the hearing.

The limitations, rules, and safeguards established by the legislature when authorizing forfeiture of certain derivative contraband, are essential to the orderly administration of justice, to the protection of constitutional due process concerns, and to the rights of innocent third parties affected by the forfeiture. However, where the common law of forfeiture is applied and there are no such statutory limitations, protections, and procedures, we will not impose a judicially created *automatic* rule of forfeiture in the absence of a careful and thorough consideration of the impact of the forfeiture or the goals to be accomplished by the forfeiture.

Automatic forfeiture of vehicles in all cases in which it can be established by a preponderance of the evidence that a particular vehicle was used while a person was under the influence of alcohol will have a disparate impact upon less affluent people than upon the more affluent. The penalty imposed on a less affluent family which has only one vehicle which is their sole means of obtaining food, medical assistance, and transportation to employment, will be substantially worse if the vehicle is automatically forfeited, than the penalty of forfeiture imposed on a person who has multiple vehicles and the means with which immediately to buy another car upon the automatic forfeiture of the one used while driving under the influence of alcohol. Thus, if the purpose of the forfeiture is a penalty, it is one which

discriminates against the less affluent. And if the purpose of the penalty is to remove the instruments with which to commit the crime in the future (see *Maglisco, supra* at 532, 491 A.2d at 1381), again the penalty is only effective against the less affluent defendant. A more uniformly effective penalty would be one unrelated to the financial condition of the defendant such as one affecting the legal right to drive or the legal right to consume alcoholic beverages.

Particularly disturbing in the present case (which significantly is an appeal from a judgment of sentence rather than from an order in a *civil* action relating to forfeiture, as are *Coghe, Maglisco,* and *Peetros*) where no full record has been established evidencing circumstances which warrant the forfeiture is the fact that the trial court imposed the minimum period of incarceration provided by law "because a lengthy period of incarceration would result in a severe hardship on his wife and children...." (Trial court opinion, p. 6.) However, there is nothing of record to indicate that forfeiture of the truck would not work a hardship equally severe as a lengthier term of imprisonment. In fact, although the trial court recites in its opinion that by imposing a minimum period of incarceration, he "spar[ed] the young family the loss of its sole breadwinner," appellant's post-trial motion to withdraw his plea avers on the contrary that his wife is employed, and that the vehicle involved is the only one the family owns. There also is nothing in the record to indicate whether, upon forfeiture of the vehicle, the family will be able to obtain food from the grocery store or whether the child or children of the appellant, if they are of school age, will be able to get to school. Thus, the forfeiture ordered in this case, without consideration of all relevant evidence concerning the impact of the forfeiture, raises serious questions about the accomplishment of the trial court's laudable goal to protect the innocent family members.

For these reasons, it would be better to leave to the legislature exclusively the task of determining what derivative contraband is forfeitable, under what circumstances

such property may be forfeited, and the procedures to be followed to accomplish forfeiture. However, because we are bound to follow the decisions in *Coghe, Maglisco,* and *Peetros,* which established a "common law" sanction of forfeiture, it is also the responsibility of the Court to establish, as part of the common law, procedures to be followed in deciding whether property determined as a matter of common law to be derivative contraband *may* and *should* be forfeited.

In this case appellant has complained about the lack of any procedure being followed to establish that the property here was derivative contraband and subject to forfeiture since the trial court sua sponte ordered it to be forfeited at sentencing. In fact, although appellant's Motion for Return of Property was denied, no evidentiary hearing was held in spite of the fact that Pa.R.Crim.P. 324 provides that "the judge hearing such motion [for return of property] shall receive evidence on any issue of fact necessary to the decision thereon." Therefore, the forfeiture in the instant case occurred in the absence of any advance notice to appellant that the court might forfeit the vehicle as a condition of the sentence, and without any hearing to determine the propriety of the forfeiture. Even the Commonwealth concedes in its appellate brief that should we hold that the trial court did not have the authority to order forfeiture as a condition of probation, the case should be remanded for a hearing for the Commonwealth to establish by a preponderance of the evidence that the vehicle is derivative contraband.

Since that part of the judgment of sentence imposing the forfeiture as a condition of probation must be vacated, and since the Commonwealth has legal title to the truck at present, we will remand for a hearing at which a record can be developed with regard to various matters. We recognize that at the time appellant was sentenced, the Court was presumably aware, of certain facts which were of record: that as a result of appellant's crime, appellant had damaged the left front fender and door of one car, and had done

damage to the front end of another car; that this was appellant's second DUI; the results of the breathalyzer tests; that appellant "owned" the automobile, and that it was paid for; that the vehicle owned by appellant was the one used in commission of the crime; the make, year, model, and license number of the car. Knowledge of these facts prior to imposition of forfeiture is essential.

There are other essential facts, however, which the court apparently was not apprised of at the time of sentence and which will have to be ascertained at the hearing on remand. For example, it is essential that the record reveal all interests in the vehicle at the time of the commission of the crime, including legal, equitable, and possessory interests, such as whether the vehicle is titled in the names of husband and wife or the appellant and a parent. The record should also reveal whether or not the vehicle is the sole means of transportation of the family, whether the vehicle is the only means by which the breadwinner(s) in the family can continue to be employed in their present jobs, and what the transportation needs of the family are. Upon consideration of these matters developed in the record, the trial judge should then exercise his discretion in determining whether to order forfeiture, and if forfeiture is ordered, to whom the forfeitured property or the proceeds thereof shall be given. Failure to consider these factors concerning legal ownership and use of the vehicle may have the effect of inappropriately penalizing innocent family members.

Judgment of sentence is vacated insofar as it imposes forfeiture as a condition of probation. In all other respects the judgment of sentence is affirmed. The case is remanded for further proceedings. Jurisdiction is relinquished.

BROSKY, Judge, dissenting.

Upon considerable contemplation of the instant dispute and of the majority's resolution of it, I must express my inability to join their disposition in the present case. Although I readily agree with their conclusion that the statutory provisions governing the imposition of probationary

sentences will not allow the order of forfeiture, I would go another step forward and indicate my opinion that the result cannot follow under the guise of common law forfeiture either.

As a starting point it cannot escape notice that there is a strong sense of suspicion emitted in the majority's opinion regarding the logical and legal soundness of some of the earlier precedent to which the majority now, in apparent reluctance, submits to. Such faithfulness to the concept of stare decisis is to be commended yet, in my opinion, the majority is perhaps more deferential to this concept than is necessary considering the facts of this case.

First of all, it can be readily discerned from a review of the majority's opinion that the decisions of the Superior Court on the issue in question are in conflict to a significant degree. The majority asserts at page 239 of their opinion, that there is a "difference of opinion" in the Superior Court, as evidenced by the opinions in *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985), and *Estate of Peetros v. County Detectives,* 341 Pa.Super. 558, 492 A.2d 6 (1985), as to whether derivative contraband must be forfeited or is merely forfeitable. Although left out of this particular discussion, the majority had previously noted the Superior Court's holding in *Commonwealth v. Schilbe,* 196 A.2d 361, 175 A.2d 539 (1961), decided previous to *Peetros* and *Maglisco,* which held that derivative contraband *could not* be forfeited absent statutory authority. Thus, it would seem that any course of action taken by us in the present case, short of certification to the court *en banc,* would run afoul of some prior authority. This is a rather ironic scenario as the majority's opportunity to pledge allegiance to the doctrine of stare decisis is apparently occasioned only upon the apparent refusal of prior panels of this court to do the same. Consequently, under the present circumstances, the majority's loyalty to prior precedent takes on an appearance of selective, and perhaps even expedient, application of stare decisis rather than some sort of faithful and principled adherence to it. Further, in light of the conflict of authori-

ty and the majority's own expressed reservations on the logical and legal underpinnings of the cases authorizing forfeiture under the present circumstances, it is indeed rather dubious to suggest that stare decisis requires homage be paid to the suspect authority. It seems that the present circumstances present one of the rare situations when departure from the principle is not only allowable but, perhaps, advisable or necessary; particularly when the weight of the authority, as the majority seems to concede, contrasts with the authority the court feels compelled to follow.

I am further confused, to a degree, by the majority's belief that they must follow certain prior precedent, yet feel free to embark upon a pronouncement of extensive procedures and standards for determining questions of forfeitability as part of the court's responsibility to define this area of common law. This effort is really nothing short of judicial legislation and appears, to me at least, as invasive and out of place, if not more, than simply exercising the court's more accepted ability to limit the reaches of a common law rule. This is not to say that I am against the intent of the majority in this endeavor. I would welcome the changes espoused by the majority far more so than I would a pronouncement that the vehicle must be forfeited. However, I feel that the majority must reach as far to make the pronouncements and changes they do as would be required to simply find that the vehicle is not subject to forfeiture under the circumstances presented. Furthermore, the pronouncements made by the majority simply do not go far enough and could quite possibly create a whole new set of problems. For instance, the majority appears to be establishing a rule that if the vehicle is found to be "derivative contraband" the decision of whether or not it will be forfeited will be left to the discretion of the trial court considering all the facts of relevance. In the present case, this practice would appear to be a mere formality preceding an order of forfeiture. Most of the factors suggested for consideration by the majority were in fact

made aware to the trial court and the trial court responded with a sua sponte order of forfeiture. Certainly the same result is possible, if not likely, to follow a remand here. Further, should forfeiture be ordered after the majority's course is followed, to what degree will the forfeiture determination be reviewable and what standard of review will apply? Will the trial court's determination be subject to review by the appellate courts and, if so, what will the appellate courts need to find to upset the order of forfeiture?

My concerns regarding this area of law actually begin with a rather fundamental aspect of it, the definition given to derivative contraband. Although well supported by the majority, in terms of case law, I have considerable difficulty with the definition expressed in the majority's opinion. If, as here, a legally possessed piece of property is used in the commission of a crime, describing it as "derivative" contraband appears to be a true misnomer. The property, as such, is not "derived" from illegal activity at all, as the term would seem to suggest. Rather only the contraband status itself could possibly be said to be derived from the illegal activity. More correctly, the property could possibly be considered "associative" contraband, as the lawfully possessed property becomes guilty by its association with the commission of a crime. However, calling it derivative contraband seems to be rather inappropriate. I make this commentary because it appears to me intuitively speaking, that, there is a substantial difference between considering one's lawfully possessed property contraband because of a transitory connection with an illegal act, and considering gains derived from an illegal act or enterprise contraband, as the term seems to more correctly imply.

It is a well established principle in our jurisprudence that one should not be allowed to profit from an illegal act. Thus, gains from an illegal act or enterprise would seem to be properly forfeitable, thus qualifying it as contraband (of a derivative nature). However, to allow the fruits of honest labor to be forfeited seems to be another proposition alto-

gether. Our founders did insist, after all, that we not be deprived of life, liberty or property without due process of law. Their belief that individuals should be secure in their possessions obviously played a part in the inclusion of this language. Thus, although there may indeed be circumstances where forfeiture of property due to its association with or utilization in an illegal act would offend neither concepts of due process nor justice, certainly such circumstances are far more limited than a situation where the forfeited property is *derived* from illegal acts or an illegal enterprise. It is entirely possible that the term derivative contraband has been used loosely enough over the years to bring within its scope a classification of property not properly includable within it so as to legitimize a type of forfeiture that should be utilized only very sparingly. It is this development with which I have great difficulty. In fact, only a few of the reported cases really apply the principle utilized by the majority here.

Many of the reported forfeiture cases have resulted in the forfeiture of derivative contraband. However, they were more representative of a true "derivative" contraband situation. Some of these cases hinged upon a question of lawful possession of the property as opposed to those which rested upon mere usage of the property in an illegal act. In these cases, the items of property in question were not contraband per se. However, just as surely, like contraband items, there were impairments to a claim of good or lawful title. *Commonwealth v. Doranzo*, 365 Pa.Super. 129, 529 A.2d 6 (1987), is perhaps most representative of these cases. In *Doranzo* the petitioner was seeking a return of items which were found to be stolen. Thus, it would appear, in that case, the forfeiture was essentially predicated upon the fact that, under those circumstances, the petitioner could not claim a legitimate right of possession to this property. They were not items to which the petitioner had legitimate title but lost due to their usage in the commission of a

crime.[1]

Similar to a large degree are the cases of *Sugalski v. Cochran*, 365 Pa.Super. 370, 529 A.2d 1104 (1987), *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976), and *Commonwealth v. Coghe*, 294 Pa.Super. 207, 439 A.2d 823 (1982). *Sugalski*, which did not find a successful forfeiture, and *Landy* are most similar to a true derivative contraband situation and are, therefore, perhaps even more instructive. At issue there, were the alleged monetary proceeds of illegal gambling and drug selling transactions. Of course, to the extent the money could be proven to have been derived from such illegal activity, the petitioners would be hard pressed to establish a right to its return. *Coghe* is also somewhat similar in that the money sought to be returned was the product or consideration of an illegal contract. It is logical to assume that to the same extent one could not enforce performance of or sue for the default of such a contract in civil court (the murderer, had he performed the act, would be unable to sue the conspirator for nonpayment of the contract) one would be unable to seek return of the money in a Rule 324 context either.[2] Thus, in *Coghe*, there was also a question of right of possession. With these cases separated from the rest, only *Estate of Peetros* and *Petition of Maglisco* can be said to have involved situations similar to the present one.

1. Note that the houses used to facilitate the fencing operation were not seized as contraband. If the theory asserted here by the trial court were adopted, ostensibly, the houses would be subject to forfeiture. The same statement could be made in *Sugalski*. Needless to say, the attempt to seize and forfeit such property would seem unduly harsh and controversial.

2. Although not presenting itself in *Coghe*, the best procedural context to bolster the majority's position would have been an attempt by the authorities to forfeit an agreed upon, but yet unpaid, sum for the contract killing. Or, alternatively, an attempt to have forfeited the sum paid to the hired assassin but returned to the husband after the failed attempt. If the money truly became contraband because of its usage in the commission of a crime, then it would seem that possession of it by the appellant would not be of relevance and the order of forfeiture, under those circumstance, would have been of greater significance.

In both *Maglisco* and *Peetros,* the property found forfeitable was used in the commission of a crime, thus, providing the basis for the forfeiture. And, like the present case, the property was neither derived from the illegal act, nor was there a question of lawful title. Nevertheless, and apparently without regard to the *Schilbe* decision, the property was found to be derivative contraband and subject to forfeiture. The majority finds this authority materially indistinguishable and, thus, follows it despite expressed reservation. This is where I part company with the majority, I do believe there is a material difference between *Maglisco, Peetros* and the present case.

In *Maglisco,* supra, we discussed *Schilbe, Landy* and *Coghe,* as well as common law forfeiture, and concluded that *Landy* and *Coghe* implied, contrary to *Schilbe,* that forfeiture was allowable without statutory authority. Yet, even in *Maglisco* the problems of common law forfeiture and the fact that it is essentially a penalty were acknowledged. Further, certain reforms in this area of law were also acknowledged and endorsed. Thus, *Maglisco* cannot be cited as a uniform and unequivocal adoption of common law forfeiture of property connected to the commission of a crime. It certainly implies that there exists a limitation upon its reaches, although the opinion is silent as to where the line may be found. The question that remains in light of *Maglisco* and *Peetros,* is whether all property that is used in, or connected to, the commission of a crime constitutes derivative contraband subject to forfeiture? If not, then where shall the line be drawn?

In *Maglisco,* the subjects of controversy were a pistol which had been used in a deliberate assault upon, or perhaps even an attempt to kill, another individual, and some rifles found at the petitioner's residence which were not used in violation of the law. We concluded that there was no basis to support forfeiture of the rifles but that the pistol was properly forfeitable as derivative contraband. We discussed, among other things, the concepts of blameworthiness and proportionality and concluded, in essence,

that in voluntarily using the pistol in the assault the owner had "forfeited" her right to possession of it. In contemplation of the *Maglisco* opinion one can perhaps see some of the motivation behind a finding that the pistol was derivative contraband. First, there was a deliberate and intentional attempt to injure another individual.[3] Secondly, the

**3.** The majority takes issue with my characterization of the *Maglisco* opinion, an opinion drafted by myself for the panel, saying that my characterization is lacking in factual support on the face of the *Maglisco* opinion. However, my general assertion, that there was assaultive behavior in *Maglisco*, is reasonably inferable from the information contained in the opinion. We state at the beginning of *Maglisco* that appellant shot her husband. Although there is no direct expression that the shooting was something more than accidental, there is certainly plenty of indications that the panel, myself included, acted with the understanding or belief that it was. First of all, in common experience, when individuals state that somebody shot someone there is a connotation of intentional behavior. That is why one more often sees the phrase "accidentally shot" than "intentionally shot." Intention appears, in common parlance, to be read into the phrase "shot" more often than not, thus, necessitating the qualifying word "accidentally" where applicable. Secondly, we concluded that a crime had been committed with the pistol. This, by itself, rules out any innocent behavior or accident. There would have to be at least a finding of criminally negligent behavior to make this conclusion. Thirdly, we mention the trial court's motivation of preventing another firearm incident, something which would seem unnecessary if the shooting were purely accidental. Fourthly, we state that appellant's actions were "quite blameworthy", 491 A.2d at 1385, and that forfeiture would be "quite reasonable in light of the seriousness of appellant's offense." Id. These references suggest, I believe, deliberate and culpable behavior even if not explicitly so stated. Thus, when the entire opinion is read together I do not believe the majority's assertion, that there is an inference raised that Mrs. Maglisco did not have the intent to shoot her husband, rings true. Rather, I believe the inference is raised that the panel was operating under the assumption that the shooting was intentional.

The majority further states that even were they to read *Maglisco* as dealing with a deliberate shooting they would still find it applicable as there is no indication that the drinking and driving were not deliberate. I believe they miss the point of my discussion. There is no dispute that appellant deliberately consumed alcohol and then deliberately drove. However, there is a substantial difference in the nature and culpability of deliberately shooting someone and driving a vehicle after having consumed alcohol. The difference is the state of mind or mens rea. There is no indication that appellant attempted or intended to strike someone with his vehicle, there is no indication that appellant intended anything more than to drive home, safely one would presume, even if he was unsuccessful in his attempt. Certainly, the majority would not contest the assertion that there is a substantial difference in intending to injure or kill someone and intending an act

loss resulting from the forfeiture of the pistol was neither substantial nor does it appear to me, in an intuitive sense, to be disproportionate to the crime committed.

Similarly, in reviewing *Estate of Peetros,* supra, perhaps the most dominant theme in the opinion, aside from the obvious holding that the subjects of controversy, loan sharking record books, were used in the commission of a crime, is the fact that the books found forfeitable had essentially no other legitimate use or purpose, and although it was not necessarily illegal to possess the books, neither was it truly foreseeable that upon their return they would serve any legal or legitimate purpose. This is significant because in *Maglisco* we also recognized that a goal of forfeiture is to remove the operating tools of a crime from criminals.

Thus, *Maglisco* can be reasonably cited to allow common law forfeiture of an instrumentality used in the deliberate attempt to injure or kill another individual, and *Peetros* could be reasonably cited to allow forfeiture of items which essentially are instruments of crime without much prospect of lawful or legitimate use. However, I remain unconvinced that these opinions compel extension of the principle to points unknown. The majority misses the thrust of my analysis of these decisions. I am not asserting that *Maglisco* and *Peetros* can only be cited for the propositions I have attributed to them. However, they can certainly be *reasonably cited* for these propositions, and, just as certainly they do not compel citation beyond these propositions. Part of our responsibility as an appellate court is the interpretation, explanation, extension and *limitation* of prior precedent.

which is negligent as to the safety of others. The difference in a homicide case is the difference between a potential death sentence and a few years imprisonment. We treat the different crimes so differently because of the importance we place on the state of mind to the eventual same result. Consequently, if we assume that *Maglisco* dealt with a deliberate shooting then certainly a reasonable individual would have to concede that there exists a distinguishing factor in the present case, even if one eventually concluded that that factor was not substantial enough to compel a different result.

It is a fundamental appellate tenet that decisions be read narrowly upon their facts and that the application of legal principle is developed over a period of exposure to various factual patterns, similar in some ways, yet different in others. Undoubtedly, the principle enunciated in *Maglisco* and *Peetros* can be applied here if we wish—it could also, from a logical standpoint, be applied to take a blind man's walking stick from him should he use it to jaywalk—but just as undoubtedly there is a difference in important factual matters which also would justify non-adherence, or, more accurately stated, refusal to extend the principle to this class of case. More importantly, if we find the vehicle forfeitable in this case where shall we draw the line?

If the forfeiture of an automobile is allowable here, would it not also be allowable when an individual exceeds the speed limit or attempts to beat out a red light but fails, or when an individual changes lanes or makes a turn without signalling? In short, will every violation of the motor vehicle code require or allow forfeiture of one's vehicle? These laws, just like those prohibiting driving while intoxicated, are passed to provide a safe driving environment and every breach of them creates an increased risk of an injurious or fatal collision or accident. To use the majority's analysis, it would be a deliberate breach of the law and the fact that fortuitously no one was injured or killed as a result of the driver's indiscretion would be irrelevant. Thus, will one be under substantial risk of forfeiting the vehicle being driven every time one enters a vehicle? I doubt that few drivers make even a routine trip to work or the shopping mall without somewhere technically violating a section of the vehicle code. We could simply set the radars on our highways at 56 miles per hour and confiscate and forfeit thousands of vehicles. What about vehicles parked in no parking zones? Shall they be towed away never to be driven by their rightful owners again? These are just examples involving automobiles; I am certain that many other harsh examples could be found in virtually

every facet of life and affecting all conceivable types of property if the basic principle is applied without limitation.

There would seem to be a significant difference, even if only an intuitive one, between declaring burglary tools or gambling or drug paraphernalia contraband and removing such contraband from one's possession and declaring one's automobile or other legally held property contraband simply because it can be connected to an illegal act. It would seem somewhat apparent that removing property that has little if any potential for legal or legitimate use is substantially different than removing from one's possession legitimate and legal property that has been somewhat tainted by a transitory brush with a transgression of the law. The majority states their belief that the principle of *Peetros* and *Maglisco* must be similarly applied in this case. Yet the appellant here, although engaging in careless conduct, did not deliberately attempt to injure another, nor is the automobile an instrument of crime which will likely be used for only illegitimate purposes. Thus, I believe, the present case is distinguishable to a degree which I would consider material, and I believe the more prudent approach is to leave to the legislature any significant extension of the principle in question: particularly in light of the authority stating that forfeiture without statutory authorization is uncommon, supra, and authority indicating that forfeiture is not favored in the law. See, *In re Fisher's Estate*, 442 Pa. 421, 276 A.2d 516 (1971).

For these reasons, I would find that the principles of common law forfeiture neither require nor allow the forfeiture of the vehicle in question here. Thus I dissent.