**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Matthew Alexander BASINGER,**
**Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 25, 2009.

Filed Oct. 21, 2009.

---

Christopher E. Mohney, DuBois, for appellant.

Earle D. Lees, Jr., Assistant District Attorney, DuBois, for Commonwealth, appellee.

BEFORE: BENDER, BOWES and CLELAND, JJ.

OPINION BY BENDER, J.:

¶ 1 Matthew Alexander Basinger appeals the judgment of sentence imposed following his conviction of two counts of Driving Under the Influence of Alcohol (DUI) and the summary traffic offense of Vehicle Entering or Crossing Roadway. *See* 75 Pa.C.S. §§ 3802(a)(1), (b), 3324 (respectively). Basinger contends, *inter alia*, that the sentence the court imposed, which consisted of a period of probation conditioned on the defendant's completion of a flat term of incarceration, is not consistent with the Pennsylvania Sentencing Code, 42 Pa.C.S. § 9721, *et seq.*, and therefore is illegal. We concur in Basinger's assess-

ment. Accordingly, we vacate the judgment of sentence and remand for re-sentencing.

¶ 2 Basinger's arrest in this case follows a traffic infraction shortly after midnight on May 19, 2007. Operating a red pickup truck, Basinger pulled out of the entrance of a National City Bank parking lot located in Dubois City, Clearfield County, directly in front of another vehicle and a Clearfield police patrol car driven by Office Dustin Roy. The driver of the other vehicle was able to avoid a collision only by slamming on his brakes and coming to an almost complete stop. Based on his observation of the incident, Officer Roy concluded that Basinger had failed to yield the right of way to oncoming traffic pursuant to 75 Pa.C.S. § 3324 and, accordingly, conducted the stop at issue here.

¶ 3 Upon approaching Basinger's vehicle, Officer Roy observed that Basinger had bloodshot eyes, smelled of alcohol and was hesitant to speak or look at him.[1] When the officer then confronted him "because he pulled out in front of a vehicle and almost caused an accident," Affidavit of Probable Cause at 1, Basinger responded "I know, I'm sorry," and acknowledged that he had consumed three beers at a nearby sports bar before leaving to go to the ATM at National City Bank. Officer Roy then directed Basinger out of his vehicle and administered two field sobriety tests, which Basinger failed. At Officer Roy's request, Basinger agreed to a blood draw, completed at Dubois Regional Medical Center, which revealed a blood alcohol content of 0.15%—almost twice the legal limit. Officer Roy then filed the complaint in this action based in part on the Basinger's BAC.

---

1. In the Affidavit of Probable Cause, Officer Roy attested "I could already smell the odor of alcohol coming from inside the truck before I even got up to the window."

¶ 4 Following a preliminary hearing where all charges were held for trial, Basinger filed an omnibus pre-trial motion to suppress the evidence of his intoxication obtained as a result of the May 19 traffic stop. Following a suppression hearing and oral argument on the motion, the trial court determined that the stop was supported by reasonable suspicion of a traffic violation and therefore proper. Accordingly, the court denied the motion. Basinger waived his right to a jury and his case proceeded to a bench trial on May 21, 2008, following which the trial court found him guilty of both the DUI and Vehicle Code violations. At a subsequent sentencing hearing, the court imposed two years' probation on condition that Basinger serve ninety days in the county jail. Basinger filed a post sentence motion, which the court denied. Basinger then filed this appeal, raising the following questions for our review:

I. Whether the [trial] court erred in denying the appellant's pre-trial motion to suppress physical evidence seized by the police because the police lacked the requisite suspicion to initiate the traffic stop of Appellant's vehicle that ultimately resulted in Appellant's arrest for suspected driving under the influence of alcohol?

II. Whether the [trial] court erred in denying the appellant's post-sentence motion challenging his sentence as being illegal because pursuant to the Commonwealth of Pennsylvania's sentencing code a flat term of incarceration is not permitted to be a condition of a sentence of probation?

III. Whether the [trial] court erred in denying the appellant's post-sentence motion to reconsider and modify sentence because the sentencing judge committed an abuse of discretion by imposing as a condition of a sentence of probation a flat term of incarceration, which is contrary to the Commonwealth of Pennsylvania's sentencing code?

Brief for Appellant at 6.

¶ 5 Basinger's first question challenges the trial court's denial of his motion to suppress evidence of intoxication based upon the asserted inability of the officer to establish reasonable suspicion for the stop. Brief for Appellant at 14. Our analysis of this question begins with the presumption that "[w]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Ruey,* 586 Pa. 230, 892 A.2d 802, 807 (2006) (Opinion Announcing the Judgment of the Court) (quoting *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030, 1031 (1992)). If the trial court denies the motion, we must determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease,* 750 A.2d 320, 323 (Pa.Super.2000). In so doing, we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon,* 798 A.2d 761, 765 (Pa.Super.2002). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease,* 750 A.2d at 323–24.

¶ 6 Our Courts have recognized that "[b]ecause of the severe consequences of drunken driving in terms of roadway deaths, injuries, and property damage, . . .

the government has a compelling interest in detecting intoxicated drivers and removing them from the roads before they cause injury." *Commonwealth v. Sands*, 887 A.2d 261, 271 (Pa.Super.2005). Consistent with this recognition, the Pennsylvania Motor Vehicle Code prescribes "reasonable suspicion," rather than "probable cause" as the threshold for a lawful traffic stop:

§ 6308. **Investigation by police officers**

* * * *

**(b) Authority of police officer.—** *Whenever a police officer ... has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal,* for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b) (emphasis added).

■ ¶ 7 "[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *See Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa.Super.2002) (citing *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 677 (1999)). "The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a 'particularized and objective basis' for suspecting the in-

dividual stopped." *Id.* (quoting *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001)) (emphasis in *Reppert*). Therefore, the fundamental inquiry of a reviewing court must be an objective one, "namely, whether 'the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Id.* (quoting *Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153, 1156 (2000)).

■ ¶ 8 Although Basinger acknowledges that the reasonable suspicion test allows police officers to stop motorists based on less stringent criteria than probable cause, he argues nonetheless that Officer Roy's observations here were not sufficient to support reasonable suspicion of a traffic violation. Brief for Appellant at 15. The trial court concluded that Officer Roy did articulate ample observations to establish reasonable suspicion based upon the extent to which the second vehicle was compelled to brake, coming almost to a complete stop. Trial Court Opinion, 10/20/08, at 4. We find no error in the trial court's conclusion. Officer Roy observed the defendant from a distance of little more than one car length as he followed the second car while in the ordinary course of his patrol duties. The officer saw Basinger pull into the path of an oncoming car at such close proximity as to prompt his concern of an imminent collision. *See* Affidavit of Probable Cause at 1. Basinger's own admission at the scene of the stop conceded his own recognition of the infraction. Basinger's current assertions to the contrary, suggesting that a complete stop, skid marks laid by oncoming traffic, or evasive maneuvers are somehow necessary to sustain reasonable suspicion are entirely devoid of merit. Officer Roy's observations amply substantiated his suspicion that Basinger had violated the Motor Vehicle Code by failing to yield the right of

way. The trial court did not err in so finding.

¶ 9 In support of his second question, Basinger contests the trial court's authority under the Pennsylvania Sentencing Code to impose a flat sentence of incarceration as a condition of a term of probation. This question challenges the legality of the sentence. *See Commonwealth v. Robinson*, 931 A.2d 15, 21 (Pa.Super.2007) (characterizing "illegal sentence" as "a term of art that our Courts apply narrowly, to a relatively small class of cases," where the claimed error "implicate[s] the fundamental legal authority of the court to impose the sentence that it did"). Our scope of review of such claims is plenary and our standard of review, *de novo.*

¶ 10 In this case, Basinger asserts that the trial judge exceeded his authority on sentencing as the Pennsylvania Sentencing Code requires that terms of incarceration be designated as a maximum and minimum and that consequently, "flat sentences" are prohibited. Brief for Appellant at 18. In addition, Basinger asserts that even if the sentence is viewed strictly as a probationary term, the Sentencing Code does not provide for incarceration as a term of probation, rendering any sentence so tailored illegal. *Id.* at 19. The trial court counters that our Supreme Court, in *Commonwealth v. Pierce*, 497 Pa. 437, 441 A.2d 1218 (1982), rejected this same claim of illegality and that this Court has since applied the resolution in *Pierce* to our own dispositions in *Commonwealth v. Roach*, 307 Pa.Super. 506, 453 A.2d 1001 (1982), and *Commonwealth v. Heath*, 852 A.2d 1247 (Pa.Super.2004) (unpublished memorandum) [2]. Upon review, we find the cases cited by the trial court inapplicable to the claims Basinger raises. Moreover, when viewed in light of the limitations imposed by the Sentencing Code, the form in which the trial court rendered the judgment of sentence in this case exceeds the court's lawful authority. The resulting term of probation conditioned on completion of jail time is therefore illegal.

¶ 11 The Pennsylvania Sentencing Code allows multiple sentencing options that trial courts may apply either singly or in combination. The following section sets forth the options from which the court may select:

§ 9721. **Sentencing generally**

(a) **General rule.**—In determining the sentence to be imposed the court shall, except as provided in subsection (a.1),[3] consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

**2.** *Heath* was not officially reported and as such may not be cited or relied upon except in the most limited of circumstances. The Internal Operating Procedures of this Court delineate those circumstances as follows:

An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it cites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding."

Superior Court I.O.P. 65.37 A. For the reasons discussed below, we do not find either of the foregoing criteria satisfied. Accordingly, we disregard *Heath* in its entirety.

**3.** This subsection, 42 Pa.C.S. § 9721(a.1), allows imposition of intermediate punishment when a minimum term of incarceration is otherwise prescribed by statute.

(4) Total confinement.

(5) A fine.

(6) County intermediate punishment.

(7) State intermediate punishment.

42 Pa.C.S. § 9721(a). In accordance with this section, a trial court may impose any of the stated sentencing alternatives subject to limitations on the form in which the resulting judgment of sentence is rendered.

¶ 12 Where the sentence is one of total confinement as specified in section 9721(a)(4), the court is compelled to state a maximum sentence, which is, in effect, the full sentence to be served, and a minimum sentence, which specifies the date on which the defendant, once jailed, is eligible for parole. *See Gundy v. Commonwealth, Pa. Bd. of Prob. and Parole*, 82 Pa.Cmwlth. 618, 478 A.2d 139, 141 (1984). The Sentencing Code mandates this maximum/minimum configuration, and specifies that the minimum sentence imposed "shall not exceed one-half of the maximum sentence imposed." *See* 42 Pa.C.S. § 9756(a), (b)(1). A "flat" sentence, which fails to specify the required minimum term for purposes of parole eligibility, violates these requirements of the Sentencing Code and is therefore illegal. *See Commonwealth v. Cain*, 432 Pa.Super. 47, 637 A.2d 656, 658–59 (1994) ("Cain's sentence is technically illegal because the court imposed a flat one year of imprisonment without specifying any minimum sentence."). Consequently, the form in which the court imposed sentence here constitutes reversible error. *Id.* at 659. ("Where a court neglects to mention a minimum sentence, appellate courts ordinarily will not fill in the missing element, but will vacate the sentence and remand for resentencing.").

¶ 13 Nor is the deficiency of such a flat sentence corrected by imposing it as a condition of probation. No section of the

Sentencing Code contemplates imprisonment as an element of a probationary sentence; probation is in fact a less restrictive alternative to imprisonment directed at rehabilitating the defendant without recourse to confinement during the probationary period. *Commonwealth v. Crosby*, 390 Pa.Super. 140, 568 A.2d 233, 235 (1990) (quoting *Commonwealth v. Quinlan*, 488 Pa. 255, 412 A.2d 494, 496 (1980)) ("Parole and probation are established variations on the imprisonment of convicted criminals and are primarily concerned with the rehabilitation and restoration to a useful life of the parolee or probationer."). Thus, probation may be employed in conjunction with confinement as a "tail" designed to assist the defendant in reintegrating with society following a term of imprisonment, or may be imposed where mitigating factors make prison unnecessary. *See* 42 Pa. C.S. § 9722 (recognizing mitigating factors that "shall be accorded weight in favor of an order of probation"). *See also Crosby*, 568 A.2d at 235 (quoting *Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179, 1184 (1979)) ("[C]onditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen."). Under no circumstances is a sentence of probation a vehicle for imposing "total confinement" outside the restrictions imposed upon it by section 9756.

¶ 14 This conclusion is borne out by the plain language of the Code itself, which at section 9754 recognizes an expansive set of conditions the trial court may impose upon probation, all of which seek to modify a defendant's behavior *without total confinement:*

§ 9754. Order of probation

(a) General rule.—In imposing an order of probation the court shall specify

at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.

**(b) Conditions generally.**—The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.

**(c) Specific conditions.**—The court may as a condition of its order require the defendant:

(1) To meet his family responsibilities.

(2) To devote himself to a specific occupation or employment.

(2.1) To participate in a public or non-profit community service program unless the defendant was convicted of murder, rape, aggravated assault, arson, theft by extortion, terroristic threats, robbery or kidnapping.

(3) To undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose.

(4) To pursue a prescribed secular course of study or vocational training.

(5) To attend or reside in a facility established for the instruction, recreation, or residence of persons on probation.

(6) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.

(7) To have in his possession no firearm or other dangerous weapon unless granted written permission.

(8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.

(9) To remain within the jurisdiction of the court and to notify the court or the probation officer of any change in his address or his employment.

(10) To report as directed to the court or the probation officer and to permit the probation officer to visit his home.

(11) To pay such fine as has been imposed.

(12) To participate in drug or alcohol treatment programs.

(13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

(14) To remain within the premises of his residence during the hours designated by the court.

42 Pa.C.S. § 9754(a)-(c). *See also Crosby,* 568 A.2d at 235 ("These enumerated specific conditions of probation ... can all be classified as behavioral restrictions or conditions. They are ... directed at rehabilitation of a defendant, and are not punitive[.]").

¶ 15 We acknowledge that section 9754(c)(13) allows the trial court considerable latitude in specifying conditions that are not otherwise prescribed in the other subsections of the statute. See *Cassidy v. Montgomery Co.,* 306 Pa.Super. 222, 452 A.2d 524, 526 (1982) ("This provision indicates that it is not necessary that a condition be specifically enumerated in the statute to be a valid condition of probation[.]"). Nevertheless, conditions imposed must be constructive measures directed at rehabilitation through behavioral modification and, as a matter of statutory construction, must be of similar character to those that are specifically enumerated. *See* 1 Pa.C.S. § 1903(b) ("General words shall be construed to take their meanings and be restricted by preceding particular words.").[4]

4. *Compare Commonwealth v. Pantalion,* 957     A.2d 1267, 1273 (Pa.Super.2008) (applying

Thus, the conditions the court imposes may not be punitive *and may not include incarceration.*

¶ 16 In so holding, we acknowledge the trial court's reliance on our Supreme Court's disposition in *Pierce, supra,* and our own decision in *Roach, supra,* to conclude that the use of incarceration as a term of probation does not render the resulting sentence illegal.[5] Basinger argues that both cases are distinguishable. We agree.

¶ 17 In *Pierce,* the defendant appealed a sentence of four to eight years' incarceration imposed after the defendant had previously served eleven and one-half months' incarceration and been paroled. *Pierce,* 441 A.2d at 1219. While on parole, the defendant commenced serving a probationary tail of eight years. *See id.* After completing parole but while still on probation, the defendant was convicted of a new crime in response to which the trial court revoked his probation and sentenced him to a full four to eight year sentence for the prior crime on which he had already served jail time and over two years' probation. On appeal, the defendant argued that the sentence imposed following revocation exceeded the court's statutory authority and violated double jeopardy. Our Supreme Court concluded that it did not exceed the court's statutory authority as "upon revocation of probation, the court possesses the same sentencing alternatives that it had at the time of the initial sentencing." *Id.* at 1220. Thereafter, specifically addressing the defendant's double jeopardy claim, the Court rejected a prior decision of this Court upon which the defendant had relied. The Supreme Court's discussion of that case appeared, in its entirety, as follows:

> Appellant's claim that his sentence is violative of the Fifth Amendment double jeopardy clause is based upon the Superior Court's decision in *Commonwealth v. Johnson,* 269 Pa.Super. 122, 409 A.2d 94 (1979). We disagree and reject the Superior Court's ruling in *Commonwealth v. Johnson, supra.*

*Pierce,* 441 A.2d at 1220. Nevertheless, further exploration of *Johnson* shows that nothing in our Supreme Court's rejection of it controls our disposition of the claims Basinger raises here.

¶ 18 In *Johnson,* the defendant had been convicted and first sentenced to two to four years' incarceration, which the sentencing court immediately suspended in favor of a term of four years' probation, completion of which was conditioned upon service of ten months' in the county jail. *Johnson,* 409 A.2d at 95. After the defendant had completed the jail time but still remained on probation, he committed a new crime in response to which the trial court revoked his probation and reimposed the original two to four year jail term. *See id.* On appeal of the defendant's sentence, a panel of this Court concluded that the reimposition of the original sentence

common law doctrine of *ejusdem generis* to affirm grading forgery of a postal money order as second-degree felony because money order as an "other instrument[ ] issued by the government" enumerated in criminal statute proscribing forgery had "intrinsic pecuniary value" similar to "money, securities, postage or revenue stamps," enumeration of which preceded more general language at issue in the statute) with *Commonwealth v. Ryan,* 909 A.2d 839, 842–43 (Pa.Super.2006) (vacating sentence imposed for forgery of building permit where the trial court graded the offense as a second-degree felony because that permit had no "intrinsic pecuniary value" and therefore was not of the same nature as "money, securities, postage or revenue stamps").

**5.** The trial court and the Commonwealth also rely on our decision in *Heath,* 852 A.2d 1247, which, as we have noted above is not precedential.

violated double jeopardy as the defendant had already served ten months in prison as a condition of probation. *See id.* Significantly, our disposition in *Johnson* never addressed the issue of whether jail time may be imposed as a condition of probation.

¶ 19 Subsequently, in *Roach,* we addressed a scenario where as in *Johnson,* the trial court had imposed a sentence of incarceration and suspended it in favor of a term of probation conditioned on service of twenty-three months and twenty days in the county jail. *Roach,* 453 A.2d at 1002. After the defendant's completion of the jail time but while he still remained on probation, the defendant committed another crime in response to which the trial court revoked his probation and reimposed the original sentence of incarceration. *See id.* at 1003. As in *Johnson,* the defendant argued on appeal that reimposition of the original sentence of incarceration after he had already served jail time as a condition of probation violated double jeopardy. *See id.* Relying on the Supreme Court's disposition in *Pierce,* we recognized the rejection of *Johnson* and concluded accordingly that the reimposed sentence did not violate double jeopardy.

¶ 20 As exposition of the claims in these three cases makes apparent, the issue at stake in each was limited to whether the reimposition of a sentence of incarceration after completion of jail time was a violation of double jeopardy. Although in each case the time served prior to the appeal had been served as a condition of probation, in none of the cases did our Courts validate or even discuss whether the use of incarceration as a condition of probation was authorized by the Sentencing Code. Moreover, neither the rationale of the respective dispositions nor the result reached depends in any way on the use of incarceration as a probationary condition. In point of fact, it appears that the involvement of probation in each case was entirely incidental. Additionally, in all of the cases the Court's disposition was based on double jeopardy, violation of which Basinger has specifically declined to argue. We conclude accordingly that neither *Pierce* nor *Johnson* and *Roach* provide any material guidance for disposition of the case before us.

■■ ¶ 21 Having concluded that the Supreme Court's disposition in *Pierce* does not control our disposition here, we reaffirm the holding in *Cain,* 637 A.2d at 658–59, that the applicable sections of the Pennsylvania Sentencing Code invalidate any sentence of total confinement not rendered with maximum and minimum terms stated, the minimum being not more than one-half of the maximum. *See* 42 Pa.C.S. § 9756. Moreover, we hold as a matter of first impression that no term of total confinement may be imposed as a condition of probation. *See* 42 Pa.C.S. § 9754. Because the sentence imposed in this case violates both of these directives, we are compelled to vacate the judgment and remand this matter for re-sentencing.

¶ 22 Judgment of sentence **VACATED.** Case **REMANDED** for re-sentencing. Jurisdiction **RELINQUISHED.**