J-S69012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: I.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: I.W. | : | No. 2701 EDA 2013 |

Appeal from the Dispositional Order August 22, 2013
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0002137-2013

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED DECEMBER 30, 2014**

Appellant, I.W., appeals from the dispositional order entered in the Philadelphia County Court of Common Pleas, following his adjudication of delinquency for simple possession.[1] We reverse the dispositional order.

The relevant facts and procedural history of this appeal are as follows. On May 30, 2013, at approximately 11:00 p.m., Officer Michael Ginter was on patrol in full uniform when he received information that a homicide had occurred at 24th and Tasker Streets in Philadelphia. The only other information in the flash report indicated the suspect was wearing blue shorts and a white T-shirt. Approximately one hour later, Officer Ginter observed Appellant walking eastbound on Ritner Street, approximately two miles east of the location of the reported homicide. Appellant was wearing blue shorts and a white T-shirt. Officer Ginter also recognized Appellant as someone

_____
[1] 35 P.S. § 780-113(a)(16).

who frequented the area of the reported homicide. Based on this information, the officer stopped Appellant. During the stop, Appellant appeared nervous and moved his hands behind his back out of the officer's view. Officer Ginter then performed a pat-down search of Appellant. During the search, Officer Ginter felt multiple small, hard objects in Appellant's pants back pocket. The officer recognized the objects as crack cocaine. Officer Ginter removed nine small Ziploc bags from Appellant's pants pocket. Each bag contained a white, rocky substance, which tested positive for cocaine.

The Commonwealth filed a petition to adjudicate Appellant delinquent. On June 25, 2013, Appellant filed a motion to suppress. On August 22, 2013, the juvenile court denied the motion to suppress and adjudicated Appellant delinquent for the offense of simple possession. On the same date, the court entered a dispositional order placing Appellant on probation for an unspecified period. Appellant filed a timely notice of appeal on Monday, September 23, 2013. The court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). After being granted an extension, Appellant timely complied.

Appellant raises a single issue for our review:

> DID NOT THE TRIAL COURT ERR IN DENYING THE MOTION TO SUPPRESS PHYSICAL EVIDENCE, INSOFAR AS APPELLANT WAS STOPPED AND FRISKED WITHOUT REASONABLE SUSPICION?

(Appellant's Brief at 3).

In his sole issue, Appellant argues he was subject to an investigatory detention when Officer Ginter initially stopped Appellant on the street, because no reasonable person walking alone at night would feel free to leave under these circumstances. Appellant claims Officer Ginter's reasons for the stop were (1) Appellant's blue shorts and white T-shirt matched the generic clothing description of a suspect in a reported homicide, which had occurred one hour earlier and two miles away from the location of the stop; and (2) Officer Ginter had seen Appellant on unspecified prior occasions in the area of the homicide. Appellant asserts the officer relied on flash information, which originated from an unknown source and failed to specify the homicide suspect's age, size, race, or gender. According to Appellant, the information Officer Ginter relied on "was simply too vague, indefinite, and uncorroborated" to support reasonable suspicion that Appellant had been or was involved in any criminal activity. (Appellant's Brief at 15). Appellant concludes Officer Ginter lacked reasonable suspicion to support the investigative detention, and the court should have suppressed the items seized by the officer as a result of the unlawful detention. We agree.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Williams***, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (quoting ***Commonwealth v.***

*Jones*, 874 A.2d 108, 115 (Pa.Super. 2005)).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Williams, supra* at 27. "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006)).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005). To determine if an interaction rises to the level of an investigative detention, *i.e.*, a *Terry*[2] stop, "the court must examine all the circumstances and determine whether police action

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

would have made a reasonable person believe he was not free to go and was subject to the officer's orders." ***Jones, supra*** at 116 (quoting ***Commonwealth v. Stevenson***, 832 A.2d 1123, 1127 (Pa.Super. 2003)).

Police must have reasonable suspicion that a person is engaged in unlawful activity before subjecting that person to an investigative detention. ***Commonwealth v. Cottman***, 764 A.2d 595 (Pa.Super. 2000).

> [T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer **at the moment of the [stop]** warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa.Super. 2009) (internal citations and quotation marks omitted) (emphasis added). To validate a pat-down search or ***Terry*** frisk, an officer "must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous." ***Commonwealth v. Gray***, 896 A.2d 601, 606 (Pa.Super. 2006).

> A police officer need not personally observe unusual or suspicious conduct reasonably leading to the conclusion that criminal activity is afoot and that a person is armed

and dangerous; this Court has recognized that a police officer may rely upon information which is broadcast over a police radio in order to justify an investigatory stop.

***Commonwealth v. Jackson, J.***, 519 A.2d 427, 430 (Pa.Super. 1986) (citation and internal quotation marks omitted).

"While a tip can be a factor [in determining whether reasonable suspicion existed], an anonymous tip alone is insufficient as a basis for reasonable suspicion." ***Commonwealth v. Leonard***, 951 A.2d 393, 397 (Pa.Super. 2008). "Because an anonymous tip typically carries a low degree of reliability, more information is usually required before investigating officers develop the reasonable suspicion needed to support an investigatory stop of a suspect." ***Commonwealth v. Fell***, 901 A.2d 542, 545 (Pa.Super. 2006). ***See also Commonwealth v. Hawkins***, 547 Pa. 652, 656, 692 A.2d 1068, 1070 (1997) (stating, "[A] stop and frisk may be supported by a police radio bulletin **only** if evidence is offered at the suppression hearing establishing the articulable facts which support the reasonable suspicion"). "A major factor in justifying a ***Terry*** stop, when the suspicious conduct has not been personally observed by the officer, is the specificity of the description of the suspect." ***Commonwealth v. Jackson, M.***, 678 A.2d 798, 801 (Pa.Super. 1996), *appeal denied*, 546 Pa. 663, 685 A.2d 543 (1996) (internal citations and quotation marks omitted). "Close spatial and temporal proximity of a suspect to the scene of a crime can also heighten a police officer's reasonable suspicion that a suspect is the perpetrator for

whom the police are searching." ***Jackson, J., supra*** at 439. Likewise, "if the person described by the tipster engages in other suspicious behavior, such as flight, reasonable suspicion justifying an investigatory detention is present." ***Commonwealth v. Foglia***, 979 A.2d 357, 360 (Pa.Super. 2009) (*en banc*), *appeal denied*, 605 Pa. 694, 990 A.2d 727 (2010).

Instantly, Officer Ginter was in uniform in a marked vehicle when he received flash information around 11:00 p.m. over police radio that a homicide had occurred at 24th and Tasker Streets. The flash broadcast indicated generally that the suspect was wearing blue shorts and a white T-shirt. No other information was provided. Approximately one hour later, the officer observed Appellant walking on Ritner Street, about two miles east of the scene of the reported homicide. Appellant was wearing blue shorts and a white T-shirt. Based solely on Appellant's clothes and the knowledge that Appellant frequented the area of the reported homicide, Officer Ginter stopped Appellant. Contrary to the Commonwealth's assertion that the interaction was a "mere encounter" prior to Officer Ginter's frisk of Appellant, the officer plainly testified that he "stopped" Appellant and that "**during the stop**, [Appellant] appeared to be very nervous." (N.T. Suppression Hearing, 8/22/13, at 6) (emphasis added). Officer Ginter did not suggest he merely initiated contact with Appellant. Appellant, a juvenile, was walking alone along the street at night when a uniformed officer interacted with Appellant. Under these circumstances, a reasonable person

would not believe he was free to leave. Accordingly, the record supports the court's characterization of the interaction as an "investigatory stop" requiring reasonable suspicion. ***See Williams, supra***; ***Jones, supra***.

Nevertheless, the officer's justification for the stop was based only on his (1) observation that Appellant's blue shorts and white T-shirt matched a generic description of the homicide suspect's clothing; and (2) knowledge that Appellant frequented the area of the reported homicide. The flash broadcast failed to specify the suspect's age, gender, or race. Officer Ginter had no information regarding the suspect's physical characteristics. Further, Appellant was not near the location of the reported homicide when he was stopped; he was two miles away on foot. Officer Ginter observed nothing suspicious about Appellant's behavior before the stop—Appellant was simply walking down the street.[3] The only information the officer had to corroborate the scant flash information was his general knowledge that Appellant had been in the area of 24th and Tasker Streets on unspecified previous occasions. Additionally, the Commonwealth produced no evidence at the suppression hearing regarding the source of the flash information. Absent more, the Commonwealth failed to establish that the officer had reasonable suspicion to support his investigatory detention of Appellant. ***See Basinger, supra***. ***See also Commonwealth v. Berrios***, 437 Pa. 338,

---

[3] Officer Ginter observed Appellant's apparent nervousness and suspicious arm movements **during** the investigatory detention. Therefore, these observations are immaterial to the question of whether the officer had reasonable suspicion to stop Appellant in the first place.

341-42, 263 A.2d 342, 344 (1970) (holding investigatory stop was unlawful where officers received information over police radio that two black males in dark clothing and one Puerto Rican male in light clothing were involved in shooting and were observed leaving crime scene walking east, where police had no reason to connect appellant and his companion to shooting except that they were walking three blocks from area of shooting twenty minutes later and they matched races and general clothing description of suspects; police "had no information of the physical make-up or characteristics of the men they were seeking"); *In re M.D.*, 781 A.2d 192 (Pa.Super. 2001) (holding officer lacked reasonable suspicion to stop appellant where appellant partially matched radio description of robbery suspect; description of suspect wearing "gray hoody and blue jeans" was too general and of little use to distinguish appellant's appearance; basis of radio information regarding robbery was unknown; and officer did not cite any personal observations of suspicious conduct before speaking to appellant).

The cases relied on by the Commonwealth are distinguishable with respect to the defendant's close spatial and temporal proximity to the reported crime at the time of the stop, and/or the level of detail in the description of the crime suspect. *See, e.g., Commonwealth v. Palagonia*, 868 A.2d 1212 (Pa.Super. 2005), *appeal denied*, 584 Pa. 675, 880 A.2d 1238 (2005) (holding stop of appellant was lawful where officer received police radio broadcast seeking assistance in apprehending two young white

males who jumped off apartment balcony in middle of night and fled toward Overlook Road; within minutes, officer observed two young white males in car on Overlook Road near apartment complex; no other cars were in area); *Commonwealth v. Vinson*, 522 A.2d 1155 (Pa.Super. 1987) (holding police acted lawfully in stopping appellant where cashier reported armed robbery and gave description of two perpetrators and their car—dark blue Grand Prix with white pinstripes, vinyl roof, and Pennsylvania license plate; within minutes after hearing robbery report over police radio, officers saw car, which fit cashier's detailed description, at gas station close to crime scene). These cases are inapposite and do not alter our conclusion that Officer Ginter stopped Appellant without reasonable suspicion. Therefore, the evidence obtained as a result of the officer's unlawful detention of Appellant should have been suppressed. *See Williams, supra*. Based upon the foregoing, we reverse.

Dispositional order reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014