J-A10034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALI A. QAWIEE | : | |
| | : | |
| Appellant | : | No. 653 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 22, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003043-2019

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED MAY 3, 2024**

Appellant, Ali A. Qawiee, appeals the judgments of sentence imposed by the Court of Common Pleas of Delaware County after a jury found him guilty of robbery, burglary, and false imprisonment.[1] He challenges the admission of evidence that he was arrested while in possession of a semi-automatic handgun two months after the instant robbery that was committed with a gun that substantially matched the gun that was later found on him. He also challenges the discretionary aspects of his sentence. Upon review, we affirm the convictions, vacate the judgments of sentence, and remand for resentencing.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3502(a)(1)(i), and 2903(a), respectively.

On January 25, 2019, Shakeem Ho-Sang visited the Terminal Pub Check Cashing business located at the 69th Street Terminal in Upper Darby to cash a paycheck in an amount between $670 and $700. N.T. 10/27/21, 21-25, 31-32, 37, 59. After cashing his check and buying some items at that location, he returned to his apartment near the Terminal in the unit block of Victory Avenue. *Id.* at 30-34. He "took all [his] stuff off," stashed his money in a dresser drawer, and, shortly thereafter, heard a knock on his door. *Id.* at 34-35, 52. When he opened the door, Appellant forced himself inside.[2] *Id.* at 35. Appellant asked Ho-Sang "where the money was," and forced him onto a bed. *Id.* at 36-37. Ho-Sang acted like he did not know what money Appellant was talking about. *Id.* at 37. Appellant forced Ho-Sang into the bathroom where he tied Ho-Sang to a radiator with some home electronics and HDMI cords before he started ransacking the apartment. *Id.* at 37-38, 42. Appellant hit Ho-Sang two to three times on the back of his head with a gun. *Id.* at 38. Appellant took the money that Ho-Sang stowed in the drawer, some cigarettes, and Ho-Sang's cellphone before leaving the apartment.[3] *Id.* at 37-38, 40.

---

[2] Appellant's face was not covered at that time and Ho-Sang identified him at trial as the intruder. N.T. 10/27/21, 35-36, 45, 58. Ho-Sang also noted in his trial testimony that Appellant was wearing black gloves during the incident at the apartment. *Id.* at 44.

[3] The cellphone was never subsequently recovered, and the police were unable to track it because Ho-Sang terminated service on the phone shortly after the incident. N.T. 10/27/21, 92.

- 2 -

Ho-Sang was left on the bathroom floor with his hands tied together and to the radiator and his legs tied together. N.T. 10/27/21, 38, 40. After about fifteen to thirty minutes, he was able to untie himself. *Id.* at 41-42. He went next door to an automobile repair shop to call the police. *Id.* at 42. Ho-Sang was thereafter taken to a police station where photographs were taken of the wounds on the back of his head. *Id.* at 43. In a statement to the police, Ho-Sang described Appellant's gun as a chrome semi-automatic. *Id.* at 53-55. To be exact, Ho-Sang agreed at trial that he described the gun as chrome for the statement, but he did not recall describing the type of the gun. *Id.* at 55 (Ho-Sang: "Yeah, I said it was chrome, but I didn't know if it was semi-auto or not."). At trial, Ho-Sang added that the gun was "like a small gun you can hold in your hand … not like – big like a[n] AR or nothing like that." *Id.* at 55. He also noted at trial that the gun was "like a Glock," and by "chrome," he meant that the gun was "[l]ike gray and black." *Id.* at 44. The police showed Ho-Sang a photographic array on the day of the incident and he "picked out" Appellant. *Id.* at 57-59; Trial Exhibit C-5 (photographic array).

Responding police officers took photographs of Ho-Sang's apartment, showing that it was ransacked and in disarray. N.T. 10/27/21, 62-63. They also noticed the home entertainment and HDMI cords that were tied to the radiator in the bathroom. *Id.* at 64. The scene was not processed for DNA and fingerprints because Ho-Sang told them that the intruder had been wearing gloves. *Id.* 65-66. As a result of the police officers' recovery of the check stub that Ho-Sang had cashed earlier that day and Ho-Sang's assertion

- 3 -

that he had previously been at the check cashing business, the police responded to that business. *Id.* at 67. The business confirmed that Ho-Sang had been there. *Id.* at 67. A review of the business's surveillance footage showed a person in line behind Ho-Sang that matched Ho-Sang's description for the intruder. *Id.* 67-68.

The police also recovered surveillance footage from the inside and the outside of the 69th Street Terminal of the Southeastern Pennsylvania Transportation Authority (SEPTA), a shopping center across the street from the terminal, and Ho-Sang's apartment building. N.T. 10/27/21, 68. A compilation of the recovered videos showed Ho-Sang walking into the check cashing business at 12:13 p.m. *Id.* at 71. It then showed Ho-Sang cash two checks, followed by Appellant cashing a check directly after him. *Id.* at 73. It showed Ho-Sang leave the store in the check cashing business at 12:16 p.m. *Id.* at 73. In the compilation video, Appellant left the same store and followed Ho-Sang to Victory Avenue. *Id.* at 73-78. Appellant can be seen putting on gloves in the video after about thirty to thirty-five seconds of following Ho-Sang. *Id.* at 78. The video also showed Appellant 36 minutes later, running away from the area of Ho-Sang's apartment toward the 69th Street Terminal while looking back towards the apartment. *Id.* at 78-79. After obtaining the video evidence, the police recovered a copy of the pay

records for Appellant from the check cashing business, including the copy of the check he cashed which had his address on it.[4] *Id.* at 79-80.

After obtaining the check cashed by Appellant, the police contacted the payee of the check, Solid Waste Services, Inc., and confirmed Appellant's name, address, and date of birth with that company. N.T. 10/27/21, 80. Based on that information, the police obtained a photograph of Appellant that they used for the photographic array that they showed to Ho-Sang. *Id.* at 80. The Upper Darby police had difficulty subsequently confirming Appellant's identity due to his use of different aliases with varied spelling and the use of multiple birth dates and social security numbers for him. *Id.* at 81. They executed a search warrant at the property listed on the check that Appellant had cashed, but they were unable to locate him there. *Id.* at 82. In the meantime, an arrest warrant for Appellant was entered into a national crime database. *Id.* at 83.

At trial, when Detective Matthew Rowles of the Upper Darby Police Department testified that Appellant was later taken into custody in Philadelphia, Appellant's counsel requested a sidebar where he broached the issue that Appellant was found in possession of a gun at the time of his arrest. N.T. 10/27/21, 83-84. Counsel objected to the admission of evidence concerning the recovered gun, pursuant to Pa.R.E. 404(b), because there had

_____

[4] The check was addressed to "Ali Qawiee Williams" as opposed to how his name is docketed as "Ali A. Qawiee" in the caption for this appeal. N.T. 10/27/21, 79.

been no evidence that Ho-Sang had been asked to identify the recovered gun as the gun that had been used in the home invasion incident at Ho-Sang's apartment. ***Id.*** at 84. The trial court agreed to permit the admission of the evidence concerning the possession of the gun and limited examination about the arrest as follows:

> … [A]ll right, here's my thought on this. It's not technically 404(b), however, I think it's relevant because this case is a robbery with a gun. So, I would agree that anything regarding the Philadelphia case should be excluded, either allegations of a prior case with a gun or whatever.
>
> …
>
> But the fact that he was arrested with a gun I think is relevant to this case. You can certainly cross examine about was it the same type gun or it's not described -- however you want cross examine [sic]. But the mere fact just strictly that he was arrested with a gun, excluding everything regarding the Philadelphia matter, I think I'll let in. Okay? Objection noted.

***Id.*** at 86. The court also granted Appellant's request for a limiting instruction about that testimony. ***Id.*** at 86-87. After the detective was asked about the recovery of items from Appellant during his arrest in Philadelphia in March of 2019, Appellant's counsel renewed his former objection and the detective testified that the recovered gun was a black and silver Bryco Arms semi-automatic handgun.[5] ***Id.*** at 89-90.

_____

[5] A photograph of the recovered gun was showed to the jury because the gun itself was still being held as evidence in Appellant's unrelated Philadelphia matter. N.T. 10/27/21, 85, 90.

- 6 -

After the conclusion of the direct examination of the detective, the trial court offered the following limiting instruction with respect to the testimony concerning the recovered firearm:

> Before we start [a break for lunch], ladies and gentlemen, I just want to give you a cautionary instruction. There was testimony about Mr. Qawiee eventually being arrested with a gun. Now, you can consider that piece of evidence that there was testimony heard earlier about a gun that was used in this case and that later on Mr. Qawiee was arrested with a gun. However, you're not to infer or assume that Mr. Qawiee is a person of bad character or that he has a propensity for criminal misconduct because he was arrested with a gun later on during this case. So, again, you can consider if you find it relevant during your deliberations for strictly the reason that a gun was testified to and that a gun was found on Mr. Qawiee when he was arrested but not to infer bad character on his part because of possession of a gun, okay? All right.

N.T. 10/27/21, 101-02.

Appellant testified at trial that he had previously purchased marijuana from Ho-Sang. N.T. 10/27/27, 124, 126. He claimed that he recognized Ho-Sang while walking to a bus from the check cashing business and then decided to go buy more marijuana from Ho-Sang. *Id.* at 129, 131. Appellant then admittedly walked to Ho-Sang's home. *Id.* at 131. He asserted that Ho-Sang invited him into the apartment. *Id.* at 133. He then supposedly got in a "kerfuffle" when he complained of the "grade of the weed" that he previously purchased from Ho-Sang and they parted ways without making an exchange of marijuana. *Id.* at 134-36. Appellant alleged that the "kerfuffle" had "turned physical" with "[s]hoving, [and] then a couple punches," and, during the exchange, he hit Ho-Sang on his head with a laptop cord that had an

electrical adapter on it. *Id.* at 137-38. He denied that he tied Ho-Sang to a radiator or that he was wearing gloves. *Id.* at 138-39.

On October 26-27, 2021, Appellant proceeded to be tried by a jury. The jury found him guilty of the above-referenced offenses. Verdict Slip, 10/27/21, 1-2; N.T. 10/27/21, 218. On December 22, 2021, the court sentenced him to an aggregate term of eight to sixteen years' imprisonment, including consecutive four-to-eight-year imprisonment terms for robbery and burglary along with a two-year probation term for false imprisonment.[6] Sentencing Order, 12/22/21, 1; N.T. 12/22/21, 18. On January 4, 2022, Appellant filed counseled post-sentence motions including a motion for reconsideration of sentence in which he cited his "lack of significant adult criminal history" and requested the imprisonment terms to be reimposed as concurrent terms.[7] Motion for Reconsideration of Sentence, 1/4/22, ¶¶ 6-7. On February 4, 2022, the trial court issued an order denying the counseled post-sentence motions. On March 7, 2022, Appellant filed a counseled notice of appeal and a motion to withdraw as counsel. Notice of Appeal, 3/7/22, 1;

---

[6] As will be addressed *infra*, the trial court designated that the probation term would be served concurrent with the initial imprisonment term imposed for robbery. Sentencing Order, 12/22/21, 1; N.T. 12/22/21, 18.

[7] The certified record also includes a *pro se* motion for reconsideration of sentence, dated January 3, 2022, that bears a time stamp reflecting an attempted filing date of January 10, 2022. As Appellant was represented by counsel at the time that the *pro se* motion was attempted to be filed, that motion is a nullity for purposes of our procedural history. *See* ***Commonwealth v. Nischan***, 928 A.2d 349, 355 (Pa. Super. 2007) (noting that, when defendant was represented by counsel, his "*pro se* post-sentence motion was a nullity, having no legal effect.").

Counsel Withdrawal Motion, 3/1/22, 1-2. On April 4, 2022, the trial court issued an order granting counsel's request to withdraw from representation. Order, 4/4/22, 1.

On June 22, 2022, we remanded and directed the trial court to determine Appellant's eligibility for court-appointed appellate counsel. Superior Court Order, 6/21/22, 1. Present counsel was appointed. Order, 6/28/22, 1; Order, 7/19/22, 1. With the grant of a filing-date extension, Appellant timely filed a court-ordered statement of matters complained of on appeal. Rule 1925(b) Order, 7/27/22, 1; Extension Order, 8/15/22, 1; Rule 1925(b) Statement, 9/7/22, 1-5.

Appellant presents the following questions for our review:

1. Whether the lower court erred in permitting evidence that [Appellant] possessed a firearm when arrested months later and in a different county, where no connection was shown between that firearm and the weapon alleged to have been used in this case, in violation of the 6th and 14th Amendment[s] to the [United States] Constitution, Article 1 §§[ ]6, 8, and 9 of the Pennsylvania Constitution, [Pa.R.E.] 404(b)(1) and (b)(3), and [Appellant's] fundamental right to the presumption of innocence at trial[?]

2. Whether the lower court erred as a matter of law and violated the discretionary aspect[s] of [his] sentence when it imposed a manifestly excessive and unreasonable sentence, inasmuch as the trial court did not state adequate grounds for imposing such a sentence, such a sentence lacked sufficient support in the record and such sentence failed to give individualized consideration to [A]ppellant's personal history and background, and was in excess of what was necessary to address the gravity of the offense, the protection of the community, and Appellant's rehabilitative needs, all in violation of the 6th, 8th[, and] 14th Amendments to the [United States] Constitution, Article 1,

- 9 -

§§[ ]6 and 9 of the Pennsylvania Constitution and the Pennsylvania Sentencing Code[, 42 Pa.C.S. § 9701, *et seq.*?]

Appellant's Brief at 4 (formatting in brackets and references to answers of the trial court omitted).

In the first issue presented, Appellant challenges the admission of evidence concerning his possession of a gun upon his arrest in Philadelphia more than a month following the incident at Ho-Sang's apartment. Appellant's Brief at 15-26. He characterizes the testimony about the subsequent gun possession as inadmissible other bad act evidence under Pa.R.E. 404(b). ***Id.*** In particular, he alleges that the trial court erred by denying his objection to the gun possession testimony where Ho-Sang was never asked to identify the recovered gun and "there was no nexus between that firearm and the gun that was alleged to have been on the scene two [2] months earlier in this case." ***Id.*** at 15-19. He asserts that the trial court failed to conduct an on-record analysis of the prejudice of the gun possession evidence to him and demonstrated a "fallacious belief that the evidence of gun possession was not *other bad act* evidence under Rule 404(b)." ***Id.*** at 20 (emphasis in original). He also argues that cross-examination concerning the gun possession evidence and the trial court's jury instruction about it were insufficient to cure unfair prejudice to him. ***Id.*** at 18, 20.

This issue concerns the admissibility of evidence, which rests within the sound discretion of the trial court, and therefore, we "will reverse [the] trial court's decision … only if the appellant sustains the 'heavy burden' to show

that the trial court has abused its discretion." ***Commonwealth v. Bryant***, 67 A.3d 716, 726 (Pa. 2013) (citations omitted).  With respect to this burden,

> It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power.  An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Id.*** (alteration in original) (citation omitted).

Only relevant evidence is admissible at trial.  Pa.R.E. 402.  Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence and the fact is of consequence to determining the action.  Pa.R.E. 401(a)-(b).  Even if relevant, however, evidence may be excluded "if its probative value is outweighed by … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

Pursuant to Pa.R.E. 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Further, evidence of other crimes, wrongs, or acts, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a

criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Evidence of a weapon that is not specifically linked to a charged crime is generally inadmissible; however, the fact that a defendant had a weapon suitable to the commission of the charged crime is admissible. **See Commonwealth v. Christine**, 125 A.3d 394, 400 (Pa. 2015); **see also Commonwealth v. Robinson**, 721 A.2d 344, 351 (Pa. 1998). If the Commonwealth offers evidence about such a weapon, it must establish a foundation that would permit the finder of fact to infer a likelihood that the weapon was used in the commission of the crime, but the Commonwealth need not definitively establish that the weapon was actually used in the charged crime. **See Commonwealth v. Holt**, 273 A.3d 514, 537 (Pa. 2022). Any uncertainty that the proffered weapon is the actual instrument used in the charged crime goes to the weight, not the admissibility of evidence about the weapon. **Christine**, 125 A.3d at 400.

Appellant's admissibility analysis implies that the Commonwealth could not seek admission of the recovered gun unless it demonstrated that the recovered gun was in fact the gun used in the incident at Ho-Sang's apartment. He points out that Ho-Sang was not asked to identify the recovered gun and that there was no ballistics evidence. Appellant's Brief at 16-17. He alleges that there was a lack of a nexus between the recovered gun and the gun alleged to have been used to assault Ho-Sang. **Id.** at 17. **Christine**, on the other hand, did not require conclusive proof that the two

guns were one and the same. 125 A.3d at 400. Appellant could have proved that the admission of the gun was an error because the recovered gun could not have possibly been the gun that was used in the charged crimes for the instant case, but he fails to make that argument.

The relevant concern for our analysis is whether the Commonwealth laid a foundation that the recovered gun **could** have been the gun used to rob Ho-Sang. **Id.** at 401 ("The theory of the exception is that the weapon possessed could have been the weapon used…"). Appellant's possession of the recovered gun that was substantially similar to the gun used for the charged crimes in this case permitted the inference that it could have been used in the crimes committed at Ho-Sang's apartment. **Christine**, 125 A.3d at 400 ("That it was possessed may allow the inference that it could have been used.").

Moreover, the evidence presented below demonstrated adequate similarity such that the recovered gun could have been the gun used to rob Ho-Sang. Ho-Sang's trial testimony reflected that he identified the gun in his statement to the police as a chrome semi-automatic gun. N.T. 10/27/21, 53-54 ("I agree that [the statement] says it was chrome, semi-automatic."). At trial, he added that "it also had some black in it too" and that it was "[l]ike gray and black." **Id.** at 44, 53; **see also id.** at 56 ("Q. Okay. So today it's chrome and black. Back then it was just chrome. Fair? A. Yeah, that's fair."). He also made clear that it was a handgun. **Id.** at 55 ("It's definitely like a small gun you can hold in your hand. It's not like – big like a[n] AR or nothing like that…"). At trial, he also equivocated on whether the gun was a semi-

automatic though it was identified as that in his police statement. **Id.** At the same time, he described the gun at trial as "like a Glock," which is a common brand of semi-automatic pistols. **Id.** at 44, 90.

The testimony above provided an adequate foundation for admission of testimony of the recovered gun because the recovered gun was a black and silver Bryco Arms semi-automatic firearm, a gun that was consistent with the gun described by Ho-Sang:



Exhibit C-9 (photograph of the gun recovered from Appellant during his March 2019 arrest); N.T. 10/27/21, 90; **see Holt**, 273 A.3d at 539 (trial court did not abuse its discretion in admitting evidence of Holt's prior possession of a firearm that was allegedly of the same type used in a shooting under the similar-weapon exception to the rule precluding the admission of prior bad acts evidence; the evidence was relevant to demonstrate Holt's access to and familiarity with the weapon). Any inconsistencies in Ho-Sang's accounts of the color and make of the gun and whether the recovered gun was actually

used in the robbery/burglary incident went to the weight, not admissibility, of the evidence. *See Christine*, 125 A.3d at 400.

Further, contrary to Appellant's argument, the evidence of the recovered gun was not unfairly prejudicial and had no tendency to impugn his character as there was no assertion or reference to any firearms possession charges, consistent with the trial court's directive that limited information about the Philadelphia arrest would be presented. Additionally, our review of the record fails to uncover any assertion that Appellant lacked a license to carry a firearm. Accordingly, the assertion that he had been found in possession of a gun at the time of his arrest had no bearing on any character traits with respect to the instant matter. *Cf. Commonwealth v. Hicks*, 208 A.3d 916, 936 (Pa. 2019) (a police officer may not infer criminal activity, of a kind supporting an investigative detention, merely from an individual's possession of a concealed firearm in public, given that such possession may be lawful if the individual has a license to do so). In any event, any hypothetical prejudicial effect of allowing the admission of the evidence of the recovered gun would have been mitigated by the trial court's instruction to the jury that specifically prohibited them from inferring that Appellant was a person of bad character or had a propensity for criminal misconduct based on the recovery of the gun from him. N.T. 10/27/21, 101-02. *See Commonwealth v. Boczkowski*, 846 A.2d 75, 89 (Pa. 2004) (recognizing that limiting instructions weigh in favor of upholding admission of other bad acts evidence); *Commonwealth v.*

*LaCava*, 666 A.2d 221, 228 (Pa. 1995) (noting that jurors are presumed to follow the court's limiting instructions).

Based on the foregoing, we conclude that Appellant failed to demonstrate an abuse of discretion with respect to the trial court's ruling concerning the admissibility of the evidence concerning the firearm recovered from him at the time of his arrest.

In the second issue presented, Appellant challenges the discretionary aspects of his sentence, arguing, *inter alia*, that the imposition of consecutive four-to-eight-year terms of imprisonment resulted in a manifestly excessive and unreasonable sentence. Appellant's Brief at 27-29. We are unable to address this claim at this juncture because we notice a defect rendering Appellant's sentence illegal and necessitating a new sentencing hearing: the lower court imposed a term of probation to be served concurrently with a state imprisonment sentence.

By the terms of 42 Pa.C.S. § 9721(a), sentences including orders of probation and total imprisonment, among other sentencing alternatives, may be imposed "consecutively or concurrently." On prior occasions, however, when we have been confronted with situations where imprisonment and probationary terms have been imposed concurrently, we have ruled that the resulting combined service of these terms is incompatible, resulting in an illegal sentence. In **Commonwealth v. Basinger**, 982 A.2d 121, 127 (Pa. Super. 2009), we noted: "No section of the Sentencing Code contemplates imprisonment as an element of a probationary sentence; probation is in fact

- 16 -

a less restrictive alternative to imprisonment directed at rehabilitating the defendant without recourse to confinement during the probation period." In ***Commonwealth v. Allshouse***, 33 A.3d 31, 36 (Pa. Super. 2011), ***overruled on other grounds by Commonwealth v. Simmons***, 262 A.3d 512 (Pa. Super. 2021) (*en banc*), we stated: "[W]e find no support in the Pennsylvania statutes that the General Assembly intended to permit defendants to serve a term of probation and term of state incarceration simultaneously." ***See also Commonwealth v. Brown***, 145 A.3d 184, 188 (Pa. Super. 2016) (holding that Appellant Brown's probationary sentence did not commence until his release from federal custody and noting that because "probation rehabilitates a defendant in a less restrictive manner than total confinement" then "logic would lead to the conclusion that a term of probation cannot be served while the defendant is imprisoned on an unrelated sentence, whether it be in a state facility as in ***Allshouse*** or in federal custody as with Brown").

When confronted with the imposed judgments of sentence in this case, we must conclude that there was no authority for the trial court to impose them in their current form pursuant to ***Allshouse***, and determine that they are illegal and must be corrected. ***See Commonwealth v. Merced***, 308 A.3d 1277, 1283 (Pa. Super. 2024) ("If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated.") (citation omitted). Accordingly, we vacate Appellant's judgments of sentence and remand for resentencing in accordance

with this memorandum.[8]  ***See Commonwealth v. Watson***, 228 A.3d 928, 941 (Pa. Super. 2020) (issues relating to the legality of a sentence may be raised *sua sponte* by an appellate court).

Convictions affirmed.  Judgments of sentence vacated.  Remand for resentencing.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/3/2024

---

[8] In light of our disposition and order remanding this matter for resentencing, we do not reach Appellant's substantive arguments concerning the discretionary aspects of the now-vacated judgments of sentence.